Geraldine TEMPLIN, f/k/a Geraldine
Biggs, a/k/a Jeri Biggs,
Plaintiff–Appellant,

v.

Lynette R. WEISGRAM, Substitute Trust-
ee, and Federal Deposit Insurance Cor-
poration, Defendants–Appellees.

No. 88–1801
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 8, 1989.

Joe Putnam, Irving, Tex., for plaintiff-ap-
pellant.

Gregory E. Gore, Ann S. DuRoss, Wash-
ington, D.C., Robert J. Clary, Johnson,
Bromberg & Leeds, Dallas, Tex., for de-
fendants-appellees.

Before POLITZ, KING and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff Geraldine Templin filed suit in
state court, seeking a temporary restrain-
ing order (TRO) and an injunction prevent-
ing the trustee of a failed bank and the
FDIC in its corporate capacity (collectively,
the FDIC) from conducting a foreclosure
sale of Templin's alleged homestead. Af-
ter the state court granted the TRO, the
FDIC removed to federal court and filed a
motion for summary judgment, which the
district court granted. We affirm.

I.

The relevant facts are not in dispute. In
1985, Templin's then-husband, Billy Bob
Biggs, was encountering certain financial
difficulties in connection with a loan made
to him by the First National Bank of Irv-
ing, Texas (the "bank"). Under an oral
agreement among Biggs, the bank, and a
Robert M. Nelson, the bank agreed to
make a loan, secured by Biggs and Temp-
lin's home in Irving, to Biggs through a
simulated sale of the couple's home to Nel-
son.

This was accomplished by having the
couple execute a warranty deed to Nelson,
who in turn executed (1) a promissory note
in the amount of $104,000 and (2) a deed of
trust to a trustee with the bank as benefi-
ciary. In exchange, the bank forwarded to
Biggs, through Nelson, $104,000, of which
$42,120 was retained by the bank to cover
a debt then owed by Biggs. Finally, Nel-
son reconveyed the property, subject to the
deed of trust held by the bank, back to
Biggs and Templin. All parties agreed
that Biggs would pay off the promissory
note executed by Nelson in favor of the
bank.

As has happened all too often recently, the bank was declared insolvent, FDIC stepping in as receiver. After selling certain of the bank's assets to another bank, FDIC in its capacity as receiver sold the remaining assets, including the Nelson promissory note and deed of trust, to FDIC acting in its corporate capacity. Neither the note, the warranty deed, nor any of the bank's files and records contained any reference to the oral agreement among Biggs, Nelson, and the bank regarding the simulated sale.

When the Nelson note became delinquent, FDIC posted the property for foreclosure sale pursuant to the terms of the deed of trust executed by Nelson. Templin, who has maintained the property as her residence since 1978, filed suit in a Texas state court to restrain the FDIC from proceeding with the foreclosure sale, arguing that the deed of trust held by the FDIC was void under the Tex. Const. art. 16 § 50.[1] After removal, the district court granted summary judgment for the FDIC, holding that Templin was barred by 12 U.S.C. § 1823(e) and *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), from contesting the validity of the facially valid deed of trust.

## II.

Section 1823(e) provides that "[n]o agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC]" unless it meets four specific requirements. As the Supreme Court noted in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987), one of the central goals of the statute is to protect the FDIC from undisclosed "secret" agreements that undermine the value of a bank's assets:

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness[,] ... when the FDIC is deciding whether to liquidate a failed bank, ... or to provide for purchase of its assets (and assumption of its liabilities) by another bank.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified [instruments] that are in fact subject to undisclosed conditions.

*See also FDIC v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986).

At first glance, the facts as affirmatively pleaded by Templin veritably cry out for the application of section 1823(e).[2] Templin does not contend, nor could she, that the oral agreement satisfies the requirements of section 1823(e). She does, however, make the rather innovative argument that since a simulated sale of a homestead such as that engaged in here is void under Texas law, no "right, title, or interest" in her homestead ever vested in the FDIC such that section 1823(e) would even apply.

For support, she looks to a brief passage in *Langley,* in which the Court held that section 1823(e) barred the maker of a note from asserting against the FDIC a defense based upon the failed bank's alleged misrepresentation of existing facts. *See* 108

---

**1.** Section 50 provides in pertinent part:
No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

**2.** On the facts as alleged, one cannot help but reach the conclusion that the loan was made through a simulated sale solely to deceive federal and state bank regulators. All parties knew that the transaction was invalid under the Texas Constitution and therefore would be unenforceable; on the bank's records, however, the note and deed of trust executed by Nelson would likely lead bank examiners to believe that the instruments did not run afoul of state law and were therefore valid assets. We cannot ignore the fact that this conduct is quintessentially the type of conduct against which § 1823(e) was designed to protect the FDIC.

S.Ct. at 402. In passing, the Court noted that the respondents in the case conceded that

> the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents . . .—would take the instrument out of § 1823(e), because it would render the instrument entirely void . . . thus leaving no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].'

*Id.* (citations omitted). Arguing by analogy, Templin contends that, under Texas law, all of the instruments involved in the simulated sale of her alleged homestead, including the deed of trust held by the FDIC, are void, thus leaving the FDIC with no "right, title or interest" in the property.

We conclude that *Langley* cannot be so read. First, we are reluctant to create, on the basis of *dictum*, an exception to section 1823(e) for conduct that is without doubt precisely the type of conduct to which the section was meant to apply. The focus of the Court's discussion was whether a defense of fraud in the inducement—not fraud in the factum—was covered by section 1823(e). Thus, an acknowledgement of what one party in the case conceded as to the defense of fraud in the factum certainly does not rise to the level of a dispositive holding, and arguably does not even rise to the level of indicating, however tentatively, the Court's views on the issue.

Second, even if we accept the passage as having some force, it should not be read as Templin suggests. Given the focus of section 1823(e), it is the manner in which an instrument is proven to be void, not the conclusion that the instrument is void, that

determines whether it is within the statute. The defense of fraud in the factum does not involve proof of any side agreements; rather, a party must show that, solely as a result of another party's actions, he signed a document without full knowledge of the "character or essential terms" of the instrument. Restatement (Second) of Contracts § 163 (1981). Where, as here, however, an instrument's invalidity can be established only by reference to a side agreement in which all parties voluntarily participated, the reasoning and legislative intent underlying section 1823(e) apply with full force.[3]

### III.

We thus hold that, because Templin's defense based upon Texas law could be established only by proving the existence of an agreement that does not meet the terms of section 1823(e), that section applies and operates to preclude her from asserting the defense. The district court's grant of summary judgment in favor of the FDIC is AFFIRMED.

---

3. *See FDIC v. Hatmaker,* 756 F.2d 34, 37 (6th Cir.1985) (concluding that § 1823(e) applies to fraud defenses in which a party must show a side agreement, but not to cases in which no side agreement need be proven); *Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir.) (applying § 1823(e) only to those cases in which the party must prove side agreements), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

In *In re Howard,* 65 B.R. 498 (Bankr.W.D.Tex. 1986), the court held that the debtor's assertion that Tex. Const. art. 16 § 50 invalidated the FDIC's lien on his homestead was not barred by § 1823(e). Without expressing approval of the

result reached or the reasoning used by that court, we note that *Howard* is distinguishable for the simple reason that, in that case, "no agreement [was] sought to be enforced by the Howards against the FDIC." *Id.* at 503. In *Howard,* no simulated sale took place; the debtor simply asserted that the deeds of trust which he personally executed and the bank accepted were invalid on their face. Unlike the parties in this case, therefore, neither party in *Howard* sought to enforce or introduce evidence relating to an undisclosed side agreement in contravention of § 1823(e).