Jeanne PATTERSON,
Plaintiff–Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Defendant–Appellee.

No. 89–1773.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1990.

Raymond A. Connell, Healy & Baillie, New York City, for plaintiff-appellant.

Gregory E. Gore, F.D.I.C., Washington, D.C., Robert E. Hoblit, F.D.I.C., Midland, Tex., for defendant-appellee.

Before RUBIN, POLITZ, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

This appeal concerns primarily whether 12 U.S.C. § 1823(e) precludes Patterson from offering evidence in support of her homestead claim as a defense against foreclosure by the Federal Deposit Insurance Corporation (FDIC) when: (1) her homestead claim is not based on an agreement, but instead arises under the Texas Constitution and statutes exempting its citizens from forced sale of their homesteads; but (2) the evidence offered is, in part, contrary to her homestead disclaimer in the deed(s) of trust in issue. Because the district court erred in excluding such evidence, we REVERSE and REMAND on that issue, but AFFIRM the denial of a directed verdict against the FDIC concerning whether a sale of collateral was commercially reasonable.

## I.

In February 1986, Patterson borrowed $78,500 from the Western Bank of El Paso, Texas, for personal and business matters. The promissory note provided that:

This note is secured by Deed of Trust lien(s) on Tract 9 and a portion of Tract 8, SUPPLEMENTARY MAP OF THOMAS PLACE SUBDIVISION, an addition to the City of El Paso, El Paso County, Texas, which portion of Tract 8 is more particularly described by metes and bounds in Deed of Trust of even date herewith from the maker of this note ... reference to which Deed of Trust is hereby made for said description.

That same day, Patterson executed the deed of trust, which provided that it was for real estate in El Paso County described as "Tract 9 and a portion of Tract 8 ... which portion of Tract 8 is more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes."[1] However, Patterson signed the deed of trust without the metes and bounds attachment; when that property description was later attached, it began with an incorrect description starting at the north half of lot 9, instead of lot 8.[2]

In May 1986, without Patterson's knowledge, the escrow agent filed in the deed of trust records a corrected copy of that deed of trust, entitled "REFILED TO ATTACH CORRECTED METES & BOUNDS"; attached to that deed of trust was a revised property description, correcting the metes and bounds to begin with the north one-half of lot 8 and supplying a missing call. Both deeds of trust contained the following homestead disclaimer:

The grantor represents and declares that the property hereinabove described and conveyed forms no part of any property by grantor owned, used or claimed as exempt from forced sale under the laws of the State of Texas, and grantor disclaims and renounces all and every claim thereto under any law, and hereby designates 611 Country Club Road in the City

---

[1]. At trial, Patterson made an offer of evidence relating to her homestead claim. In order to provide a complete description of that claim, some of the facts presented in this opinion are taken from that proffer.

[2]. Patterson also contends that the description referencing tract 9 and a portion of tract 8 was not contained in the deed of trust when she signed it, but she does not dispute that the promissory note she signed that same day provided that it was secured by a deed of trust lien on tract 9 and a portion of tract 8.

of El Paso, El Paso County, Texas, as grantor's homestead.

Patterson maintains that 611 Country Club Road is the same as tract 8 and is her homestead, together with a small portion of tract 9.[3]

In March 1986, Patterson and her daughter essentially renewed a prior loan, again for business or personal reasons, and gave Western Bank a promissory note for $5,819, secured by a security agreement and collateral consisting of, *inter alia,* jewelry and loose precious stones.

The Western Bank failed in March 1987. The FDIC entered initially as a receiver and then, through a purchase and assumption agreement, purchased various assets of the bank, including the promissory notes, deed of trust and security agreement at issue here. After Patterson defaulted on the promissory notes, the FDIC sold the jewelry at auction for $3,150 in April 1988, resulting in a deficiency of approximately $4,400 on the second note.

Patterson petitioned in Texas state court for a declaratory judgment invalidating the deed of trust under Texas law because it encumbered her homestead. Patterson also sought to bar the FDIC from recovering any deficiency on the second note, contending that its handling of the sale was unreasonable.

The FDIC removed the action to federal court and counterclaimed for foreclosure of the pledged real estate. Patterson raised several defenses, including the commercial unreasonableness of the sale and her homestead exemption. Additionally, she asserted that the deed of trust was void because of the uncertainty of the legal description and the use of her street address to delineate her homestead, and that the deed of trust was void under the Texas Statute of Frauds because she signed it without the referenced property description attached.

In June 1989, FDIC moved in limine to preclude Patterson from offering evidence "concerning any portion of tract 9 or the north half of 8 ... that conflicts with [her] disclaimer [in the deed of trust] that ...

the property is not her homestead." On the day the jury trial began, the district judge heard argument on the FDIC motion. Essentially, the FDIC argued that Patterson should not be permitted to assert or attempt to prove anything, including her homestead interest, in contradiction of the express disclaimer that the pledged property was not her homestead. Patterson contended that she was only barred, by 12 U.S.C. § 1823(e), from asserting or proving an agreement that contradicted the deed of trust and that she should be permitted to raise various legal defenses including, *inter alia,* (1) the invalidity of the lien under Texas law to the extent that it encumbered her homestead and (2) that the deed of trust was void. The district court granted the motion, precluding Patterson from offering evidence on the extent of her homestead interest.

At the close of Patterson's case, the district court (1) granted the FDIC a directed verdict on Patterson's claim for homestead exemption and on her claim that the deed of trust was void because it both inadequately described the real estate covered by the deed and violated the statute of frauds; and (2) denied the FDIC's motion for a directed verdict on the commercial reasonableness of the jewelry sale.

After the FDIC rested, Patterson moved unsuccessfully for a directed verdict on the commercial reasonableness issue. Only one question was submitted to the jury and by way of special interrogatory: "Was the [FDIC's] sale of ... Patterson's jewelry and stones commercially reasonable? Answer yes or no...." The jury answered yes. Patterson did not object to the special interrogatory nor to the underlying jury instruction and does not appeal the jury's verdict.

Patterson unsuccessfully sought relief through various post-trial motions, and then timely appealed to this court. At Patterson's request, the district court entered an order staying the foreclosure proceedings pending appeal.

---

**3.** It appears from the proffer that Patterson's house is situated on the south half of tract 8, and that the back fence, trees, and horse corral are in the north half of tract 8.

## II.

Patterson contends that the district court erred: (1) in granting the FDIC's motion in limine and the subsequent directed verdict on the homestead issue; (2) in granting the FDIC a directed verdict on whether the trust deed was void both for indefiniteness and because it was created without her knowledge or authorization in violation of the statute of frauds; and (3) in denying her a directed verdict on the commercial reasonableness of the jewelry sale.

### A.

Concerning the homestead claim, the district court's order in limine, and the resulting directed verdict, on that claim was based on a legal issue—the application of 12 U.S.C. § 1823(e); therefore, we do not review the order under the traditional abuse of discretion standard.

> [W]here ... the admissibility determination necessarily involves a substantive legal decision there exists a two-tiered review process. The Court must first review de novo the validity of the underlying legal analysis. Once the Court has evaluated the propriety of the district court's substantive analysis upon which the evidentiary ruling is based, it then reviews the evidentiary ruling under the abuse of discretion standard.

*Stokes v. Georgia–Pacific Corp.*, 894 F.2d 764, 767 (5th Cir.1990).

### 1.

■ The statute in issue, 12 U.S.C. § 1823(e), provides:

> No *agreement* which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section ..., either as security for a loan or by purchase ..., shall be valid against the [FDIC] unless such an agreement—
>
> (1) is in writing,
>
> (2) was executed by the [bank] and any person claiming an adverse inter-

est thereunder, including the obligor, contemporaneously with the acquisition of the asset by the [bank],

> (3) was approved by the board of directors of the [bank] or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the [bank].

(Emphasis added.) Based on the plain language of the statute, the district court properly excluded Patterson's attempts to introduce representations (in this instance oral) allegedly made by bank officers in connection with her homestead exemption.[4] However, the district court's ruling unduly limited other evidence Patterson sought to present on the extent of her homestead in the pledged property.

We hold that § 1823(e) does not preclude Patterson from attempting to prove her right under Texas law to her homestead. Together with applicable statutes, the Texas Constitution provides:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided....

Tex.Const. art. XVI, § 50. As stated, the loan in issue was for business or personal purposes and does not fall within any of the above articulated exceptions.

Patterson's homestead right "exist[s] independent of any agreement between the parties...." *In re Howard*, 65 B.R. 498, 503 (W.D.Tex.1986) (citing to *FDIC Corp.*

---

**4.** Likewise, the district court properly excluded a Western Bank loan officer's memorandum contained in the bank's records when it failed in March 1987 as not meeting the requirements of § 1823(e). The memorandum, dated November

24, 1986, stated: "It is difficult looking at the credit file to ascertain which part of the realty secures our debt and which part constitutes [Patterson's] homestead which of course is exempt from forced sale under Texas law."

*v. Blue Rock Shopping Center,* 766 F.2d 744, 753 (3d Cir.1985)). In *Howard* the court addressed a similar challenge and found § 1823(e) inapplicable to a claim which was not based on an agreement—secret, separate or otherwise—but was instead based solely on well-established Texas law. The court held that "the agreement which the FDIC seeks to enforce is void to the extent it provides for a lien on the homestead to secure obligations which are neither for purchase money, taxes nor improvements." *In re Howard,* 65 B.R. at 503.

The FDIC challenges this analysis on essentially two grounds: (1) federal law governs this suit, therefore this court cannot consider state law; and (2) under the expansive reading accorded § 1823(e), Patterson is precluded from contradicting the express terms of her deed of trust disclaimer.[5]

It is undisputed that federal law generally governs this suit; and accordingly, § 1823(e) would govern if it applied to Patterson's homestead claim arising under Texas law. However, looking exclusively to federal law does not dispose of this case. There is no federal homestead law, and we decline the FDIC's invitation to fashion one.

In *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979), the Supreme Court provided three factors to consider in determining whether to establish a federal common law rule to supercede conflicting state law: (1) whether the federal program is one that " 'by nature ... must be uniform in character throughout the Nation' "; (2) whether "application of state law would frustrate specific objectives of the federal programs"; and (3) "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." (Quotation omitted.) Considering these factors—especially the disruption of state commercial relationships, we decline to establish federal common law that would abrogate the well-established Texas

law, discussed in this opinion, protecting its citizens' homesteads.

■ The FDIC also asserts that as a federal holder in due course under Fifth Circuit precedent, it is not subject to Patterson's homestead defense. *See, e.g., Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1249 (5th Cir.1990); *In re CTS Truss, Inc.,* 868 F.2d 146, 150 (5th Cir.1989); *FSLIC v. Murray,* 853 F.2d 1251, 1256 (5th Cir.1988) (all according the FDIC or the FSLIC holder in due course status). However, even a holder in due course takes subject to "real" defenses. *See, e.g., Campbell Leasing,* 901 F.2d at 1249 (because defenses of tortious interference and emotional distress are "personal" rather than "real" defenses to liability, the FDIC as a holder in due course took free of these claims); *In re Howard,* 65 B.R. at 509 ("absolute invalidity under Texas law of the non-purchase money lien on the ... homestead ... distinguishes this case from those involving the assertion of merely personal defenses against the FDIC.").

As to FDIC's second contention, we recognize the expansive construction to be given "agreement" under § 1823(e). However, neither that statute, nor the cases construing it, permit its use alone to abrogate what Texas considers "an inalienable constitutional right". *See In re Howard,* 65 B.R. at 507.

For example, in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court, in affirming a decision of this circuit, rejected a defense against the FDIC based on the failed bank's alleged fraud in the inducement. The plaintiffs claimed that the failed bank had deceived them by representing that the land was larger and more valuable than it was. None of the representations were recorded in any of the loan documents. The Court held plaintiffs barred from attempting to prove these oral misrepresentations and rejected an argument that " 'agreement' ... encompasse[d] only an express promise to perform an act in the

---

5. ˙ The FDIC also contends that even if state law is considered, Patterson is estopped from asserting the homestead defense. See part II.A.3. *infra.*

future." *Langley,* 484 U.S. at 90, 108 S.Ct. at 401.

*Langley* states that the purposes of § 1823(e) are

> to allow ... bank examiners to rely on a bank's records in evaluating the worth of the bank's assets[; and]
>
> \*    \*    \*    \*    \*    \*
>
> [to] ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.

*Id.* at 91–92, 108 S.Ct. at 401. In giving this expansive reach to "agreement," the Court discussed the foundation of § 1823(e), beginning with *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

In *D'Oench, Duhme,* the FDIC acquired a note through a purchase and assumption of a failed bank. The borrower asserted that the failed bank promised that it would not demand payment on the note and attempted to rely on an undisclosed agreement to that effect. The Court held that the secret agreement was not a valid defense against the FDIC because "it would tend to deceive the banking authorities." *Id.* at 460, 62 S.Ct. at 681. When a debtor " 'lent himself to a scheme or arrangement whereby the banking authority ... was likely to be misled,' that *scheme* or *arrangement* could not be the basis for a defense against the FDIC." *Langley,* 484 U.S. at 92, 108 S.Ct. at 402 (emphasis by the Court) (quoting *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 681). The *Langley* Court stated:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402. That being said, it is understandable why the district court precluded Patterson from asserting her homestead interest in property that Patterson had, at least on the face of the deed of trust, expressly warranted was not her homestead.

However, neither *Langley* nor *D'Oench, Duhme* concerned the exact issue before this court; nor do any of the numerous decisions by this circuit concerning § 1823(e). For example, in *Templin v. Weisgram,* 867 F.2d 240 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989), a bank debtor arranged a simulated sale of the homestead to a third party. The bank was aware of the sham transaction, yet kept the arrangement out of its records. When the bank became insolvent, the FDIC stepped in and posted the debtor's property for foreclosure sale. This court excluded evidence of the agreement, finding this was "quintessentially the type of conduct against which § 1823(e) was designed to protect the FDIC." *Templin,* 867 F.2d at 241 n. 2. The court continued: "[w]here, as here, ... an instrument's invalidity can be established only by reference to a side agreement ... the reasoning and legislative intent underlying section 1823(e) apply with full force." *Id.* at 242. *Templin* does not answer the question before us; Patterson did not enter into a simulated sale—one of the few recognized means in Texas of endangering a homestead exemption, nor did she and the bank enter into an agreement to deceive.

Patterson is not now basing her homestead claim on an agreement, scheme, or bank representation. The question is whether the reach of § 1823(e) is so broad as to override the Texas homestead laws, including its constitution. We hold that under the facts of this case, § 1823(e) does not preclude Patterson from attempting to prove her homestead under Texas law.

2.

■ Patterson also contends that the deed of trust was void because (1) the street address provided was too indefinite to identify her disclaimed homestead and (2) because she signed the deed of trust without the property description, and did

not sign the corrected deed of trust (copy) attaching the corrected property description.

Under Texas law, a street address can sufficiently describe property; and given Patterson's designation of her homestead by her street address separate from the larger tracts, described in the documents by their numbers and location, the district court did not err in directing a verdict for FDIC on this issue. *See e.g., Libby v. Noel,* 581 S.W.2d 761, 764 (Tex.Civ.App. 1979) (street address sufficient where there was no other house on property and purchase agreement provided for assumption of loan and loan papers contained complete legal description); *Browning v. West,* 557 S.W.2d 848, 850 (Tex.Civ.App. 1977) ("[a] description in a deed is not required to be mathematically certain, but only reasonably certain so as to enable a party familiar with the locality to identify the premises to be conveyed, to the exclusion of others").

■ Patterson's second contention—that she did not sign the complete deeds of trust—is not a defense that may be raised against the FDIC. Patterson argues that her not signing the complete deeds of trust violates the Texas Statute of Frauds and rises to the level of fraud in the factum. Accordingly, she contends that such a defense may be asserted against the FDIC under the Supreme Court's analysis in *Langley.* 484 U.S. at 93, 108 S.Ct. at 402.[6]

In *Langley,* the Court, in *dictum,* did leave open the possibility that

> the real defense of fraud in the factum— that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents ...—would take the instrument out of § 1823(e), because it would render the instrument entirely void, ... thus leaving no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].'

484 U.S. at 93–94, 108 S.Ct. at 402 (citations omitted). This court has stated: "[t]he defense of fraud in the factum does not involve proof of any side agreements; rather, a party must show that, *solely* as a result of another party's actions, he signed a document without full knowledge of the 'character or essential terms' of the instrument." *Templin,* 867 F.2d at 242 (emphasis added).

Patterson's alleged defense fails on several grounds. Patterson admittedly signed the deed of trust without the referenced attachment; and she also asserts that the deed of trust did not even include the property description, as discussed in note 2. *See FSLIC v. Murray,* 853 F.2d 1251, 1254 (5th Cir.1988) (makers of notes were precluded from asserting that they signed signature pages in blank and that signatures were later attached to documents differing from the ones they intended). Therefore, Patterson cannot meet the requirement that "solely as a result of another party's action ... [she] signed [the deed of trust] without full knowledge of [its] 'character or essential terms.'" *Templin,* 867 F.2d at 242. Moreover, as the district court noted, the differences in the property descriptions were not material; and Patterson, in at least the promissory note, had pledged tract 9 and a portion of tract 8.

3.

■ Our conclusion that § 1823(e) does not bar Patterson from asserting her homestead rights, however, does not end this dispute. The FDIC contends that even if § 1823(e) does not preclude her claim and Texas law is applied, Patterson is "estopped" from claiming her homestead exemption because "she positively disclaimed [her] homestead benefits" in the pledged property.

This court has held that "Texas law is clear that a homestead claimant is not estopped to assert his homestead rights in

---

**6.** The Texas Statute of Frauds, § 26.01, Tex. Bus. & Comm.Code provides in part:

  (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

    (1) in writing; and
    (2) signed by the person to be charged with the promise or agreement or by someone authorized to sign for him.
  (b) Subsection (a) of this section applies to:
    (4) A contract for the sale of real estate....

property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property." *In re Niland,* 825 F.2d 801, 808 (5th Cir.1987). Citing well-established Texas law, the court continued that this is true even if "the homestead claimant has executed, acknowledged, and filed in the deed records an instrument designating a contrary homestead." *Id.* at 809.

We have, however, also recognized limited circumstances in which the Texas courts have applied estoppel, for example,

> (1) [w]hen the owners, not actually occupying the property, are so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead; (2) when the owners create a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; (3) when the owners represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed.

*Id.* at 809 (quoting *Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504, 505 (1941); *see also In re Rubarts,* 896 F.2d 107, 110 (5th Cir.1990) (applying Texas law) ("a homestead claimant is not estopped to assert his homestead rights, even if declarations have been made to the contrary, as long as the claimant is in actual possession of the homestead").[7] On the present record, we cannot agree with the FDIC that Patterson is estopped as a matter of law from asserting her homestead claim.

### B.

■ Patterson also challenges the district court's refusal to grant a directed verdict in her favor on the commercial reasonableness of the jewelry sale. We reiterate that Patterson does not challenge the jury verdict on this issue. To reverse the district court's denial of a directed verdict, we must find after reviewing the entire record in the light most favorable to the FDIC that the evidence so overwhelmingly favors Patterson "that no reasonable jury could have arrived at the disputed verdict." *See Long v. Shultz Cattle Co.,* 881 F.2d 129, 132 (5th Cir.1989).

■ Patterson argues first that FDIC failed to give her reasonable notice of the sale. Three attempts were made to deliver a certified letter notifying Patterson of the pending sale. The district court found that there was sufficient evidence to deny Patterson a directed verdict on this issue.

Second, Patterson argues that the manner in which the sale was conducted was commercially unreasonable. For example, one of Patterson's contentions is that the place of sale, the Midland area, was unreasonable because of the depressed market there. However, FDIC's witnesses testified that buyers came from wide-ranging locations, including Canada, to attend auctions in the Midland area and that at this particular sale, there were buyers from various areas in Texas and Oklahoma.

FDIC submitted sufficient evidence to entitle it to submission of this question to the jury. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc*) (impermissible to direct a verdict if the court is presented with "substantial evidence opposed to the motions, . . . of such quality and weight that [a reasonable jury] . . . in the exercise of impartial judgment might reach different conclusions").

---

**7.** *See also Howard,* 65 B.R. at 509

> The cases dealing with [the] estoppel issue unanimously conclude that where a homestead claimant is in open and continuous, actual possession and use of the property, . . . the lender is charged with notice of the homestead character of the property and the claimant is not estopped from asserting that under the Texas constitution the lien is void. Thus, when there is possession by the claimant, the defense of being a bona fide purchaser, for

> value and without notice is unavailable, regardless of whether the issue is raised as a direct defense to the validity of the lien, or indirectly as part of an estoppel defense. . . . The absolute invalidity under Texas law of the non-purchase money lien on the . . . homestead, even as to bona fide purchasers, and even in the face of deed language warranting the validity of the lien, distinguishes this case from those involving the assertion of merely personal defenses against the FDIC.

## III.

In sum, Patterson is neither precluded by 12 U.S.C. § 1823(e) nor "estopped" as a matter of law from asserting against the FDIC her claim to her homestead under Texas law. We make no finding as to whether Patterson is entitled to any, or all, of the area she claims as her homestead; that is for further proceedings on remand. Patterson's motion for a directed verdict on the commercial reasonableness of the jewelry sale was properly denied. Accordingly, this matter is

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.