**In re Don and Betty NAPIER, Debtors.**

**Don and Betty NAPIER, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver For NBC Bank–Seguin, N.A., Defendant.**

**Bankruptcy No. 91–10156–LK.**
**Adv. No. 91–1104–LK.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

May 18, 1992.

Douglas J. Powell, Austin, Tex., for plaintiffs.

Lynnelle Loke, F.D.I.C., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION ON ADVERSARY TRIAL

LARRY E. KELLY, Chief Judge.

The Court held a trial in the above-referenced adversary proceeding on January 30, 1992. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 151, and the standing Order of Reference in this District. This adversary proceeding involves the determination of the validity of a lien securing a debt owed by Don and Betty Napier, the Plaintiffs, to the FDIC as Receiver for NBC Bank–Seguin, N.A., the Defendant, and as such, is a core proceeding under 28 U.S.C. § 157(b)(2)(K). The Court has considered the pleadings and briefs of the parties, the evidence introduced at the hearing, and the Court's own independent research. Accordingly, this Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 as made applicable to contested matters under Bankruptcy Rule 9014.

## ARGUMENT OF THE PARTIES

The Plaintiffs ask that the court determine the validity of the lien securing debt they owe the Defendant, and if valid, to what extent it is valid due to the fact that it encumbers the Plaintiffs' homestead. In response, the Defendant asserts that the Plaintiffs are estopped from arguing the invalidity of the lien on their homestead by the operation of 12 U.S.C. § 1823(e) and/or the federal common law doctrine of D'Oench, Duhme. Alternatively, the Defendant requests that its lien be held valid to the extent that it represents purchase money extended for the purchase of the homestead property.[1]

## FINDINGS OF FACTS

1. On June 16, 1982, the Plaintiffs executed a Real Estate Lien Note in the amount of $60,300 payable to the First National Bank of Seguin (the "Bank") secured by a Deed of Trust of even date therewith covering 5.518 acres of the E. Gotari Survey, A–23, Guadalupe County, Texas ("Tract One").

2. On June 17, 1982, the Plaintiffs executed a Homestead Affidavit designating Tract One as their homestead and stating that a separate tract consisting of Lot 15 of Eastlawn Subdivision in the John Sowell Survey in Guadalupe County, Texas, was non-homestead property ("Tract Two"). This Affidavit was executed in conjunction with an $18,000 loan made by the Bank to the Plaintiffs to be secured by Tract Two.

3. Plaintiff Don Napier testified in his deposition dated September 20, 1991 that he could not remember obtaining a loan for $18,000 but stated that possibly that amount could represent a debt remaining unpaid in 1982 on a loan he obtained in the mid–1970's for a trucking venture. No evidence of this $18,000 note was introduced into the record at trial.

4. The Plaintiffs lived on Tract Two from 1971 to 1982. In mid–1982, the Plaintiffs moved from Tract Two to Tract One and have lived there continuously since then.

5. On October 1, 1984, the Plaintiffs executed a Real Estate Lien Note in the principal amount of $108,232.64 payable to the Bank (the "Note").

6. The Note was secured by a Deed of Trust of even date therewith which recites that it covers both Tract One and Tract

---

1. This request that any portion of the tract exceeding the urban homestead limitation of one acre be impressed with the Defendant's lien was rendered moot by the parties' stipulation at trial that the land is rural in character.

Two, with Tract One forming no part of the Plaintiffs' homestead and Tract Two being claimed as exempt as their homestead. The Deed of Trust further recites that the Note thereby secured is given in renewal and extension of various other notes, including: 1) the sum of $71,072.65 left owing and unpaid on a promissory note in the amount of $60,300 dated June 16, 1982 executed by the Plaintiffs; 2) the sum of $23,914.74 left owing and unpaid on a promissory note in the amount of $18,000 dated June 17, 1982 executed by the Plaintiffs; 3) the sum of $4,644.19 left owing and unpaid on a promissory note in the amount of $5,000 dated January 11, 1983 executed by Plaintiff Don Napier; and 4) the sum of $6,248.28 left owing and unpaid on a promissory note in the amount of $6,500 dated May 25, 1982 executed by Plaintiff Don Napier.[2]

7. Further, on October 1, 1984, the Plaintiffs executed a Non–Homestead Affidavit and Designation of Homestead in which they disclaimed any homestead right in Tract One and designated Tract Two as their homestead.

8. The parties agree that approximately $37,000 of unsecured, non-purchase money debt was included in the October 1, 1984 refinancing note.

9. No evidence was offered to show that this $37,000 amount was extended for the payment of improvements to Tract One or ad valorem taxes owed thereon.

10. Plaintiff Don Napier testified in his deposition dated September 20, 1991 that he did not know the purpose of this $37,000 amount included in the Note; however, he did know that the $60,300 owed initially as purchase money for Tract One was being renewed by the Note.

11. Plaintiff Don Napier testified in his deposition dated September 20, 1991 that the Plaintiffs' homestead never changed [after mid–1982] from Tract One despite the recitation to the contrary in the Non–Homestead Affidavit nor did the Plaintiffs ever inform the Bank that their homestead had changed.

12. The Bank was later declared insolvent, and the FDIC was appointed receiver.

13. The FDIC is the current holder of the Note.

14. The Defendant has not alleged that the Plaintiffs entered a side agreement with the Bank on the repayment of the Note other than that represented by their signing of the Non–Homestead Affidavit.

15. The Plaintiffs filed a petition under chapter 13 on January 17, 1991 which was subsequently converted to a chapter 7 on February 10, 1992.

16. No evidence was introduced at trial to show as of the petition date the amount outstanding on the Note, or the amounts outstanding on the portions of the Note alleged by the Plaintiffs to be purchase money and non-purchase money, or whether the Plaintiffs have made any postpetition payments on the Note and, if any, the amounts thereof.

### ISSUES PRESENTED

1. Are the Plaintiffs estopped from claiming Tract One as their homestead exemption due to their execution of a Non–Homestead Affidavit and Designation of Homestead dated October 1, 1984 by the D'Oench, Duhme doctrine or by 12 U.S.C. § 1823(e)?

2. If they are not estopped from claiming this exemption, to what extent is the lien held by the Defendant valid?

3. If a portion of the lien is invalid, how should the payments made by the Plaintiffs to date be applied on the Note?

### DISCUSSION AND CONCLUSIONS OF LAW

a. *The D'Oench, Duhme Doctrine.*

The D'Oench, Duhme doctrine arose from a U.S. Supreme Court case styled *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, the Supreme Court held that the maker of a

---

**2.** The court notes that the sum of the various notes being renewed and extended do not total

to the amount of $108,232.64. The parties did not mention of this fact or explain it.

promissory note payable to the order of a bank should be estopped from asserting that the parties had agreed that the instrument would not be enforced. *Id.* at 461–62, 62 S.Ct. at 681. The note was executed in order to deceive state regulators by falsely inflating the value of the bank's assets by allowing the bank to carry the note and not show past-due bonds on its books [bonds which the maker of the note had sold to the bank and which later defaulted]. *Id.* at 454, 62 S.Ct. at 678. Although not memorialized in the bank's records, the parties had agreed that the note would not be enforced. *Id.* The bank later failed, and the FDIC sued to collect on the note. *Id.* at 456, 62 S.Ct. at 679. The borrower asserted that there was no consideration for the note based on the secret agreement with the failed bank. *Id.* The Court determined that the borrower was estopped from asserting defenses based upon the oral agreement despite the fact that the maker did not know at the time of the execution of the note that it would later be used to deceive the FDIC because the FDIC was not then in existence—the Federal Reserve Act was subsequently enacted. *Id.* at 459–62, 62 S.Ct. at 680–81.

The Court's decision was not based on a holder in due course theory but upon the federal policy of protecting the FDIC and the public funds which it administers from misrepresentations as to the assets in the portfolios of the banks which the FDIC insures or to which it makes loans. *Id.* at 457–58, 62 S.Ct. at 679. In order to fit within the D'Oench, Duhme doctrine, the elements are that: 1) the maker of a negotiable instrument or other debt makes himself a party to a secret scheme or arrangement; and 2) the secret scheme or arrangement can deceive or mislead the banking authorities. *Id.* at 460, 62 S.Ct. at 680.

b. *Purpose of the D'Oench, Duhme Doctrine:*

The D'Oench, Duhme doctrine has been explained as having the dual purposes "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets" and "to ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). In the *Langley* case, the debtors asserted as a defense to a suit on a debt that they signed the subject note and security documents based on the lender's representation of the amount of acreage and mineral interests being conveyed and which later proved incorrect. *Id.* 484 U.S. at 86, 108 S.Ct. at 398. Adopting a broad construction of the term "agreement," the Court held that "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the requirements of § 1823(e) attach." *Id.* 484 U.S. at 95, 108 S.Ct. at 403.

c. *12 U.S.C. § 1823(e): the statutory codification of the D'Oench, Duhme doctrine.*

■ The Federal Deposit Insurance Act was enacted in 1950. Within that Act, the D'Oench, Duhme doctrine was codified as it applies to the FDIC in its corporate capacity at 12 U.S.C. § 1823(e). FIRREA [Financial Institutions Reform, Recovery, and Enforcement Act of 1989], enacted August 9, 1989,[3] amended § 1823(e) and now includes the FDIC as receiver within the protection from agreements not meeting the requirements of § 1823(e).[4] FIRREA Section 217 expands the D'Oench, Duhme doctrine and § 1823(e) to the FDIC when it is acting in connection with a bank or savings associa-

3. Pub.L. 101–73, 103 Stat. 183 (1989).

4. *See Texas Refrigeration Supply v. Fed. Deposit Ins. Corp.*, 953 F.2d 975 (5th Cir.1992). This amendment to protect the FDIC as receiver had little effect in the Fifth Circuit because the common law D'Oench, Duhme doctrine and § 1823(e) were considered to operate in tandem

to bar similar defenses by borrowers; the D'Oench, Duhme doctrine barred claims brought against the FDIC as receiver and § 1823(e) precluded claims brought against the FDIC in its corporate capacity. *Beighley*, 868 F.2d at 784; *Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990).

tion, to bridge banks, and to new banks organized by the FDIC to resolve banks in default. FIRREA applies retroactively, absent manifest injustice. *See Resolution Trust Corp. v. Dismuke,* 746 F.Supp. 104 (N.D.Ga.1990).

Section 1823(e) now provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

The purpose of the D'Oench, Duhme common law doctrine and § 1823(e) is to promote the stability of and confidence in the FDIC. *See D'Oench, Duhme & Co.,* 315 U.S. at 459, 62 S.Ct. at 680; *Bowen v. FDIC,* 915 F.2d 1013, 1016–17 (5th Cir. 1990).

d. *Expansion of the D'Oench, Duhme Doctrine:*

The D'Oench, Duhme doctrine has been expanded to estop the maker of a promissory note from asserting any defense arising out of an oral side agreement, even if the borrower did not intend to deceive the bank or the transaction was not fraudulent. *Beighley v. Fed. Deposit Ins. Corp.,* 868 F.2d 776 (5th Cir.1989) (borrower estopped from asserting as a defense an unwritten agreement made by the failed institution to finance a third party purchase of the borrower's collateral property as part of the borrower's overall debt workout plan). In

that case, the Fifth Circuit upheld the application of § 1823(e) to bar claims against the FDIC in its corporate capacity and the D'Oench, Duhme doctrine against the FDIC as receiver. *Id.* at 783–84.

The Fifth Circuit has recognized the expanded scope now given to the D'Oench, Duhme doctrine, even to unwritten agreements between the borrower and the insolvent bank unrelated to a bank asset. *See Bowen,* 915 F.2d at 1014–16 (§ 1823(e) barred the borrowers' claims of promissory estoppel, breach of fiduciary duty and duty of good faith and fair dealing in connection with a loan officer's alleged promise to extend a loan to the borrowers to pay taxes owed). Although the original D'Oench rule applied only to a secret agreement used as a defense to a suit on a note by the FDIC in its corporate capacity, the court stated that the expanded doctrine now "protects the FDIC as a receiver or purchaser from a borrower who has 'lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled." *Id.* at 1015. Further, the Fifth Circuit rejected a malfeasance requirement for application of the D'Oench, Duhme doctrine, making the borrower's good faith in dealing with the failed institution irrelevant. *Id.* at 1016.

e. *Effect of Combination of the D'Oench, Duhme doctrine and § 1823(e) and the Plaintiff's Claim of Exemptions.*

The Fifth Circuit has held that § 1823(e) does not preclude a borrower from attempting to prove his or her right under Texas law to a homestead claim. *Patterson v. Fed. Deposit Ins. Corp.,* 918 F.2d 540 (5th Cir.1990). In that case, the borrower signed a deed of trust without a metes and bounds attachment, and when it was later attached, it began with an incorrect description. *Id.* at 541. A corrected deed of trust was later filed. *Id.* Language in the original and corrected deed of trust stated that the property described by metes and bounds was not claimed as exempt but that property at a street address was claimed as the borrower's homestead. *Id.* at 541–42. The borrower later sued to invalidate the

724

lien because a portion of the property described by metes and bounds was the same as that referred to by the street address. *Id.* at 542. The FDIC argued that Patterson should not be allowed to assert anything in contradiction of the express disclaimer in the deed of trust that the pledged property was not her homestead. *Id.* Patterson argued that she was only barred by § 1823(e) from asserting or proving an agreement which contradicted the deed of trust but not from presenting various legal defenses challenging the validity of the lien under Texas law to the extent that it encumbered her homestead. *Id.* In holding that § 1823(e) did not preclude the borrower from attempting to prove her right to claim the property as her homestead, the court stated that the "homestead right 'exist[s] independent of any agreement between the parties.'" *Id.* at 544 (citing *In re Howard,* 65 B.R. 498, 503 (Bankr.W.D.Tex.1986)). The reach of § 1823(e) did not extend to abrogate Texas homestead laws, including the state constitution. *Id.* at 545.

In the *Howard* case, a chapter 7 debtor successfully invalidated a lien held by the FDIC to the extent that it secured non-purchase money debt on the debtor's homestead exemption. *In re Howard,* 65 B.R. at 502. That court pointed out that under Texas law, it would be clear that the lien would fail to the extent it represented non-purchase money debt; however, in the bankruptcy context, federal and not state law governs the issue. *Id.* at 502. The court discussed at length the factors which determine the appropriate rule of decision to be applied before it decided that Texas law should govern in order to maintain stability in commercial transactions and in the state exemption scheme. *Id.* at 502–507. Even granting the FDIC a holder in due course status would not defeat the Howards' defensive use of the Texas home-

stead laws because this type of defense was distinguishable from personal defenses [such as waiver, estoppel, or fraud in the inducement] which are ineffective against a holder in due course. *Id.* at 507 & n. 5. Thus, "the Howards' assertion that the FDIC's lien is invalid is not barred by the effect of § 1823(e)." *Id.* at 503.

■ Given that state law will be applied, at the time of the initial issuance of the credit the borrower must establish that the property is to be used as his homestead. "[I]n order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *In re Niland,* 825 F.2d 801, 807 (5th Cir.1987). "[I]nvestigation of intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention." *Id.* Once a borrower has established the initial homestead character of the property, the burden falls on the objecting party to show abandonment of the homestead by evidence which "make[s] it 'undeniably clear' that there has been 'a total abandonment with an intention not to return and claim the exemption.'" *Id.* at 808 (citing *McFarland v. Rousseau,* 667 S.W.2d 929, 931 (Tex.App.—Corpus Christi 1984, no writ)).

The *Niland* court set forth three categories of situations where a homestead claimant would be estopped from claiming the property as his homestead: 1) when the claimant, who is not actually occupying the property or is so using it that its status is questionable at the time the mortgage is executed, represents that the property is not his homestead; 2) when the claimant creates a lien on the homestead property by entering into a sham sale which is in fact a mortgage;[5] and 3) when the claimant

---

5. Despite a borrower's argument that a simulated sale of her homestead was void under Texas law and thus no interest in the homestead could have passed to the FDIC which would be subject to the operation of § 1823(e), the court held that the statute would apply when, as in that situation, an instrument's invalidity could only be established by reference to a side agreement [the simulated sale of the home] in which all parties had voluntarily participated. Section 1823(e) bars use of such side agreements as a defense. *Templin v. Weisgram & Fed. Deposit Ins. Corp.,* 867 F.2d 240 (5th Cir.1989), *cert. denied,* 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989).

represents that existing notes are valid mechanic's lien notes for improvements on the property secured by proper mechanic's lien contracts.[6] *Id.* at 809.

 Given the holdings of the *Howard, Patterson* and *Niland* courts, the court determines that the Plaintiffs are not estopped by § 1823(e) or the common law D'Oench, Duhme doctrine from proving the invalidity of the Defendant's lien on the property referred to as Tract One which the Plaintiffs assert is their homestead. In the situation at hand, the Plaintiffs designated Tract One as their homestead in 1982 and have lived there continuously since that time. The refinancing Note executed by the Plaintiffs in October of 1984 included approximately $37,000 of other unsecured debt to be secured by Tract One, given that the Plaintiffs were supposedly renouncing their homestead exemption on Tract One and substituting a homestead exemption on Tract Two. However, except for the Non–Homestead Affidavit, the Defendant introduced no evidence that the Plaintiffs made any representations to the Bank of an intent to abandon Tract One as their homestead. Thus, the Defendant failed to make it undeniably clear that the Plaintiffs had abandoned their homestead claim to Tract One and had shifted the claim to Tract Two as of October 1, 1984, the date of the refinancing. Given the Plaintiffs' and the Bank's long relationship and the small size of the town, this court believes it highly likely that the Bank knew that the Plaintiffs had not moved from Tract One. Therefore, under the Texas homestead laws, the Defendant's lien on Tract One is invalid to the extent that it secures non-purchase money debt. The lien would be valid to the extent that it represented payment of improvements made to the property or ad valorem taxes owed thereon; however, no evidence was admitted to characterize the $37,000 debt as being for either of these purposes.

 As for the third issue, the application of the payments made on the Note up until the date of the petition, the court will follow, with a slight variation, the decision of the *Howard* court that the payments made through the Plaintiffs' bankruptcy filing date will stand as applied. In that case, the debtors executed a note and deed of trust which renewed and extended several underlying notes and deeds of trust. *In re Howard,* 65 B.R. at 500. The first question in determining the application issue was deciding whether the debtors had a right to have the payments applied first to the purchase money and then to the non-purchase money portion of the debt. *Id.* at 510. However, that court found that no such right existed for the debtors given that the creditor had the right to apportion the payments as it saw fit; further, the debtors did not introduce evidence showing that they had directed that payment be apportioned to any particular portion of the renewal note. *Id.* at 510–11.[7] Here, application of the payments is governed by the terms of the Note which provides that the payments be first credited to interest accrued and the balance to the reduction of the principal. There is no provision contained in the Note which directs that the payments be applied or apportioned among the various debts incorporated therein. Further, the Plaintiffs introduced no evidence that they had directed application or even that they had a right to direct application of the payments other than as dictated by the terms of the Note.

---

6. *See Buchanan v. Fed. Sav. & Loan Ins. Corp.,* 935 F.2d 83 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). In that case, the borrower later challenged a mechanic's lien contract as being executed after work was performed despite a recitation in the contract that it was executed before work was performed and material furnished. The court considered such a challenge to be precluded by the D'Oench, Duhme doctrine because the borrower signed a contract containing a recital which she knew was wrong, thus she " 'lent herself to a scheme or arrangement, that was likely to mislead the FSLIC." *Id.* at 86.

7. Under general rules governing application of payments if no contract exists, " '[w]hen a debtor fails to properly exercise his power to direct the application of the payment, the creditor ordinarily may apply the payment to any valid and subsisting claim he has against the debtor.' " *Id.* at 510 (citing *W.E. Grace Mfg. Co. v. Levin,* 506 S.W.2d 580, 585 (Tex.1974)).

The *Howard* court stated that the creditor had discretion to apportion payments up until the time the controversy arose, which in that case was the date of the debtor's motion to avoid liens. *Id.* at 511. This court differs with that position and determines that the Defendant had the ability to apply the payments to the entire debt received up to the date of the petition, or January 17, 1991. Any payments made postpetition by the Plaintiffs should be credited to the original purchase money debt.

## CONCLUSION

The Plaintiffs are not estopped by 12 U.S.C. § 1823(e) or its federal common law counterpart, the D'Oench, Duhme doctrine, from asserting that, under the Texas homestead laws as set forth in Section 41.001(b) of the Texas Property Code and Article XVI, Section 50 of the Texas Constitution, the deed of trust lien held by the Defendant is invalid on the Plaintiff's property claimed as exempt as their homestead to the extent that the lien secures non-purchase money debt. Neither § 1823(e) or the D'Oench, Duhme doctrine bars the Plaintiffs from proving a right to the homestead claim when their argument is based solely on the state homestead laws. Further, the Plaintiffs are not barred from making such an argument by their execution of the Non–Homestead Affidavit and Designation of Homestead dated October 1, 1984. Given the Defendant's failure to prove that the Plaintiffs had abandoned Tract One as their homestead at the time of the October 1, 1984 refinancing, the lien is invalid to the extent that it secures approximately $37,000 of unsecured, non-purchase money debt incorporated into the refinancing of the Plaintiffs' homestead debt. The deed of trust lien is valid to the extent that it represents the original purchase money debt and any renewals and extensions thereof.

Further, the application of the payments received up to January 17, 1991, the date of the Plaintiffs' bankruptcy petition, on the refinancing note shall stand. However, any payments received on or thereafter by the Defendant shall be credited to the por-

tion of the October 1, 1984 note which renews and extends the original $60,300 purchase money debt.

## ORDER ON TRIAL

The Court held a trial in the above-referenced adversary proceeding on January 30, 1992. After taking the matter under advisement, the court entered its Memorandum Opinion of even date herewith. Pursuant thereto, it is

ORDERED that the Plaintiffs are not barred by 12 U.S.C. § 1823(e) from asserting under the Texas homestead laws the invalidity of the lien held by the Defendant to the extent that such lien secures a non-purchase money debt on property claimed by the Plaintiffs as their homestead; it is further

ORDERED that, based on Section 41.-001(b) of the Texas Property Code and Article XVI, Section 50 of the Texas Constitution, the deed of trust lien held by the Defendant is invalid to the extent that it secures any debt contained in the Real Estate Lien Note executed by the Plaintiffs on October 1, 1984 in the principal amount of $108,232.64 and payable to NBC–Bank Seguin, N.A. which was not extended to the Plaintiffs as purchase money for their homestead described as 5.518 acres of the E. Gotari Survey, A–23, Guadalupe County, Texas ("Tract One") or for the payment of improvements or ad valorem taxes owed thereon; it is further

ORDERED that the Defendant's deed of trust lien is valid to the extent that it secures the original purchase money of $60,300 loaned to the Plaintiffs via a promissory note dated June 16, 1982 for the purchase of Tract One, which amount was renewed and extended by the note dated October 1, 1984; it is further

ORDERED that the manner by which the Defendant applied any payments made by the Plaintiffs on the note dated October 1, 1984 up until the Plaintiff's bankruptcy petition date of January 17, 1991 shall stand; however, any payments received on or thereafter that date shall be credited to

the purchase money portion of the debt evidenced by the October 1, 1984 note.