935 F.2d 83
 Leila BUCHANAN, Plaintiff-Appellant,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for First Texas Savings Association, Dallas,
Texas, et al., Defendants,
First Gibraltar Bank, FSB, Intervening Defendant-Appellee.
 No. 90-8428.
 United States Court of Appeals,
Fifth Circuit.
 July 10, 1991.
 
 Mark M. Humble, Cameron, Tex. and Aaron L. Jackson, Ford, Ferraro, Fritz & Bryne, Austin, Tex., for plaintiff-appellant.
 Mark C. Taylor and Gregory N. Woods, Liddell, Sapp, Zivley, Hill & Laboon, Dallas, Tex., intervening defendant-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before GOLDBERG, SMITH, and BARKSDALE, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 In this case, First Texas Savings Association (First Texas) foreclosed on plaintiff Leila Buchanan's house after she failed to make payments for vinyl siding. She brought suit against First Texas, claiming that the lien against her house was void because she signed the contract creating the lien after work on the house had begun, in contravention of Texas law and an express recital in the contract.
 
 
 2
 After First Texas became insolvent, the Federal Savings and Loan Insurance Corporation (FSLIC) became receiver and transferred the assets of the failed financial institution to defendant First Gibraltar Bank, FSB (First Gibraltar). After removal to federal court, First Gibraltar successfully argued that Buchanan, by signing the contract despite her knowledge of the inaccuracy of the recital, lent herself to a scheme or arrangement likely to mislead banking authorities and that the so-called D'Oench, Duhme doctrine therefore barred her claims.[1] We affirm.
 
 I.
 
 3
 Buchanan and her son, Robert, entered into an agreement with Southwest Exteriors, Inc. (Southwest), under which Southwest would affix vinyl siding to Buchanan's house for the sum of $11,900. One provision of the contract stated, "This contract is executed and delivered before any labor has been performed and before any material has been furnished for the construction of the improvements for which the lien hereby created is given." (Emphasis added.) Despite this recital, Buchanan now claims that she signed the contract after the work began, her son having earlier entered into the agreement in her absence.
 
 
 4
 Under the contract, Buchanan could either pay the contract price in full or finance the cost over ten years; she chose the latter option. When she failed to make payments, First Texas, to which Southwest had assigned the lien, foreclosed pursuant to a mechanic's lien created by the contract of sale.
 
 II.
 
 5
 After foreclosure, Buchanan brought suit in state court against First Texas, seeking both damages under the Texas Deceptive Trade Practices Act and a declaratory judgment that the lien was void and that she thus still owned the house.[2] After the suit was filed, First Texas became insolvent, and the FSLIC was appointed receiver. First Gibraltar subsequently acquired all of the assets but only certain of the tax, secured, and deposit liabilities of First Texas from the FSLIC. While the case was pending in state court, Buchanan filed a lis pendens in the local property records indicating her challenge to First Texas's ownership of what had been her property.
 
 
 6
 The FSLIC removed the case to federal court. First Gibraltar successfully intervened and is now the only defendant-appellee. Buchanan and First Gibraltar filed cross motions for summary judgment; the court granted First Gibraltar's motion and dismissed the case.
 
 III.
 
 7
 In this case, a debtor challenged a creditor's foreclosure of the collateral securing her debt, arguing that the lien was void from the start.[3] Instead of rebutting this argument on the merits, the creditor contended that federal law[4] bars the debtor's contention; the district court agreed.
 
 
 8
 When determining whether the D'Oench, Duhme doctrine bars the assertion of a claim against the FSLIC (or its successor in interest), we must ask whether the party "lent [her]self to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 460, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942).
 
 
 9
 In D'Oench, Duhme, banking officials entered into side agreements that undermined the bank examiners' ability to rely upon bank records, thereby frustrating the government's insurance and regulatory policies. To address this concern, the Court adopted a rule of estoppel under which a party that had "lent himself to a scheme or arrangement" could not make a claim based thereupon.
 
 
 10
 Before considering the particular facts of the instant case, it is important to note that D'Oench, Duhme does not preclude all claims that would upset the FDIC's expectations: "D'Oench, Duhme has not been read to mean that there can be no defenses at all to attempts by the FDIC to collect on promissory notes." FDIC v. McClanahan, 795 F.2d 512, 515 (5th Cir.1986). For example, in McClanahan there was an $86,000 note that had been forged; when the FDIC took over the bank that was the creditor on the note, it assumed that the note was good. However, the fact that the Corporation's expectations would be defeated by recognition of the forgery defense did not prevent the court from concluding that the FDIC could not have sued the putative maker whose name had been forged. Id.
 
 
 11
 Accordingly, D'Oench, Duhme does not apply in all situations in which acceptance of a party's claim would defeat the government's expectations. The problem, of course, is determining when it does and does not apply. The D'Oench, Duhme Court's own articulation of the applicable test provides some insight: A party's claim is barred if that party "lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." 315 U.S. at 460, 62 S.Ct. at 681 (emphasis added).
 
 
 12
 This "lent himself" language has caused courts to focus upon the relative culpability of the party making the claim that would defeat the FDIC's expectations. For example, in FDIC v. Meo, 505 F.2d 790 (9th Cir.1974), the defendant desired to invest in a particular bank's stock. He borrowed money from that same bank and intended that the bank keep the stock certificates as security. However, the bank erroneously arranged for the issuance of voting trust certificates instead of stock.
 
 
 13
 When the bank became insolvent and the investor became delinquent in his payments, the FDIC sued him on the note. The investor argued that there was a failure of consideration. The court reversed a judgment for the FDIC, emphasizing that the maker was "wholly innocent" and was "not negligent in failing to discover the manner in which the stock order was actually executed." Id. at 792.
 
 
 14
 In McClanahan we also focused upon the relative culpability of the party making the claim that would defeat the FDIC's expectations. In this case, the defendant sought a $31,000 loan from a bank. One Orrin Shaid represented to McClanahan that he owned the bank and persuaded McClanahan to sign a blank note even though McClanahan knew that Shaid had been convicted of bank fraud. Shaid filled out the note to reflect a $62,500 loan from the bank to McClanahan and pocketed the money himself. Shaid told McClanahan that the bank had disapproved the loan, but McClanahan imprudently failed to retrieve the blank instrument.
 
 
 15
 When the FDIC took over the bank, it sued McClanahan on the note. He raised the affirmative defenses of failure of consideration and fraudulent inducement. The FDIC argued that D'Oench, Duhme barred him from raising these defenses. The district court found for McClanahan, and the FDIC appealed to this court.
 
 
 16
 In framing the question for review, we indicated the fact-specific nature of a D'Oench, Duhme analysis: "The present question, which is apparently one of first impression in this circuit, concerns the application of the rule of D'Oench, Duhme to a maker who signed a blank promissory note with the understanding that it would later be filled in to reflect the terms of a loan that he in fact never received." 795 F.2d at 516.
 
 
 17
 In reversing the district court's refusal to apply D'Oench, Duhme, we focused upon McClanahan's "reckless" conduct, concluding "that Henry McClanahan, rather than the FDIC or the innocent depositors or creditors of the failed bank, must bear the consequences of his unfortunate involvement with Orrin Shaid." Id. We concluded that McClanahan "lent himself to a scheme or arrangement whereby the [appropriate] banking authority ... was or was likely to be misled." Id. at 517 (quoting D'Oench, Duhme, 315 U.S. at 460, 62 S.Ct. at 681).
 
 
 18
 Although Buchanan's conduct was not as "reckless" and ill-advised as McClanahan's, she nonetheless "lent herself to a scheme or arrangement" that was likely to mislead the FSLIC. She signed a contract containing a recital she knew was wrong. It is inequitable for her now to reverse course and use the inaccuracy of that recital to gain relief from foreclosure.
 
 
 19
 In conclusion, Buchanan "lent herself" to a misleading scheme or arrangement, and thus the D'Oench, Duhme doctrine bars her claims. We note that our holding serves the purposes of the D'Oench, Duhme doctrine, enabling regulatory authorities to rely upon bank records.[5]
 
 
 20
 The district court's judgment is hereby AFFIRMED.
 
 
 
 [1]
 The district court had granted dismissal in favor of the Federal Deposit Insurance Corporation (FDIC), which was acting as manager of the FSLIC Resolution Fund, as receiver for First Texas
 
 
 [2]
 For this latter assertion, Buchanan relied upon the Texas Property Code, which provides in pertinent part as follows:
 (b) Encumbrances may be properly fixed on homestead property for: ...
 (3) work and material used in constructing improvements on the property if contracted for in writing before the material is furnished or the labor is performed....
 Tex.Prop.Code Ann. Sec. 41.001(b)(3) (Vernon Supp.1991). See also id. Sec. 53.059 (Vernon 1984) (describing procedure for fixing lien on homestead).
 
 
 [3]
 We assume for purposes of this opinion that the lien is void under Texas law
 
 
 [4]
 Although First Gibraltar invoked both D'Oench, Duhme and 12 U.S.C. Sec. 1823(e) (the doctrine's statutory analogue), we approach this case solely in terms of the D'Oench, Duhme doctrine
 
 
 [5]
 Promoting the government's ability to rely upon the financial institution's records is the prime purpose of the D'Oench, Duhme doctrine. Buchanan's argument that her filing of a lis pendens somehow estops the FSLIC and its successor from asserting D'Oench, Duhme is without merit. When the government takes over a failing financial institution, it is under no obligation to pore through public records to determine whether title to any of the institution's assets is in dispute; in other words, the regulatory authority it entitled to rely upon the institution's records. First Texas's records in no way reflected Buchanan's challenge to the foreclosure of her property