**In re Marilyn STEPHENS, Debtor.**

**Marilyn STEPHENS, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Bankruptcy No. 91–10637.
Adv. No. A–91–1071–S.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Oct. 8, 1992.

Bruce M. Partain, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, TX, for F.D.I.C.

Frank J. Maida, Beaumont, TX, for debtor Marilyn Stephens.

1. The Texas Constitution provides that a homestead may not be encumbered except for purchase money indebtedness, taxes, and certain mechanic's liens.
Tex.Const. art. 16, § 50 (Vernon's 1955 and Supp.1992).

2. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 460, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942).

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before this Court the Complaint of Debtor, Marilyn Stephens, for Declaratory Judgment pursuant to regular setting in Beaumont, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all the issues before the Court.

## FACTUAL BACKGROUND

On or about July 12, 1984, Marilyn Stephens, hereinafter referred to as ("Debtor"), executed a deed of trust in favor of East Texas State Bank of Buna, hereinafter referred to as ("the Bank"), creating a lien on 24.73 acres of rural property in Jasper County, Texas, hereinafter referred to as ("the Property"). Contemporaneously with the execution of the deed of trust, Debtor signed a waiver asserting that the property was not her homestead. Despite this attempted waiver, the evidence indicates that Debtor resided on the property prior to the execution of the deed of trust and at all times subsequent thereto. In addition, Debtor's residence on the property is not ambiguous.

The Buna Bank failed and the Federal Deposit Insurance Corporation, hereinafter referred to as ("FDIC"), was appointed as receiver. On or around October 12, 1990, the FDIC began foreclosure proceedings in state court. Soon thereafter, Debtor filed for relief under Chapter 7 of the Bankruptcy Code thereby abating the FDIC's state court foreclosure action. Subsequently, Debtor filed the instant adversary proceeding requesting declaratory relief of this Court that the lien secured by the deed of trust was void in that the lien violated Texas constitutional law.[1] The FDIC counters that the *D'Oench, Duhme* doctrine[2] and its statutory counter-part 12 U.S.C.A. § 1823(e)[3] preclude Debtor from asserting

Generally, the doctrine allows the FDIC to rely on the facial validity of notes coming into its possession.

3. No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section ...... either as security for a loan or by purchase or as receiver of any insured depository institution, shall be

a homestead defense in the face of her express written recitation to the contrary in the Bank's files.

During the hearing, the Court questioned counsel for the FDIC as to why the case of *Patterson v. FDIC,* 918 F.2d 540 (5th Cir. 1990) was not controlling in this case. The facts in *Patterson* are in all pertinent respects the same as the facts in this case. In *Patterson,* the debtor executed a promissory note secured by a deed of trust encumbering certain real estate. The debtor also subsequently executed a homestead disclaimer on the property. This homestead disclaimer along with the promissory note and deed of trust were in the bank's records when the FDIC became the holder of the note. As in this case, the FDIC argued that *D'Oench, Duhme* precluded debtor from asserting a homestead exemption in contravention of the written homestead disclaimer. Debtor argued, inter alia, that the *D'Oench, Duhme* doctrine did not preclude the assertion that the lien was void as violative of the homestead laws of the State of Texas. The district court ruled for the FDIC. The Fifth Circuit reversed.

The Fifth Circuit's holding was supported by several theories. First, the court found that debtor's defense was not based on any secret understanding or scheme but instead rested solely on well established Texas homestead law. After considering the factors enunciated in *United States v. Kimball Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979)[4] the court declined to accept the invitation of the FDIC to fashion federal

common law which abrogated Texas homestead law. The court also declined to find that the FDIC's status as a federal holder in due course, protected it from debtor's homestead defense. After examining relevant caselaw, the court concluded that given the absolute invalidity of this type of lien on a homestead pursuant to Texas law, the homestead defense is a real defense rather than a personal defense. Finally, the court rejected the FDIC's contention that principles of estoppel should apply to prevent debtor from asserting a homestead claim. In rejecting this argument, the court based its holding on well established Texas state court and Fifth Circuit Court of Appeals precedent which has uniformly held that principles of estoppel are ineffective against a homestead claimant who has filed a homestead disclaimer but has remained in actual use and occupancy of the homestead. *Id.* at 546–547.

In response, the FDIC urged this Court to follow the case of *Buchanan v. Federal Sav. & Loan Ins. Corp.,* 935 F.2d 83 (5th Cir.1991). In *Buchanan,* a homestead claimant entered into an agreement with a third party and executed a mechanic's lien for the provision of home improvements. The laws of the State of Texas require that in order for a mechanic's lien to validly encumber homestead property, the contract must be signed by the homestead claimants prior to the providing of service or materials.[5] Although the contract was signed by the homestead claimants after the work was commenced, the contract stated that it had been signed prior to the commencement of the services. The contract was assigned to a bank which subsequently ini-

---

**4.** The *Kimball* case provides three factors to consider in determining whether to establish a federal common law to supersede conflicting state law: (1) whether the federal program is one that by nature must be uniform in character throughout the nation; (2) whether application of state law would frustrate specific objectives of the federal programs; and (3) the extent to which application of a federal law would disrupt commercial relationships predicated on state law.

**5.** Tex.Prop.Code Ann. § 41.001(b)(3) (Vernon Supp.1991)

valid against the [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e) (West 1989).

tiated foreclosure proceedings against the homestead claimant. During the pendency of this foreclosure, the Federal Savings & Loan Insurance Corporation, hereinafter ("FSLIC"), was appointed receiver. The party asserted a homestead claim relying on the invalidity of the lien due to its untimely execution. Finding that by misrepresenting the date of the signing of the mechanic's lien note, the homestead claimant had lent "[her] self to a scheme or arrangement" whereby the banking authority on which [the FSLIC] relied in insuring the bank was or was likely to be mislead the Court found the *D'Oench, Duhme* defense applicable in spite of the homestead defense. *Id.* at 86. In passing, the Court noted that its "holding serves the purposes of the *D'Oench, Duhme* doctrine, enabling regulatory authorities to rely upon bank records." *Id.* at 86.

Because the *Buchanan* decision antedated that of the *Patterson* decision, the FDIC maintains that the court's holding in *Buchanan* constitutes the better weight of authority. This Court advised the FDIC that while it was possible that the holding in *Buchanan* conflicted with that of *Patterson*, the court in *Buchanan* had not expressly or impliedly overruled *Patterson* —in fact, the *Patterson* holding was not even mentioned even though it predated the *Buchanan* holding by only seven months. Furthermore, the facts in *Buchanan* differed from the case at hand whereas the relevant factual disposition in *Patterson* was virtually identical to this case.

In response, the FDIC argues that notwithstanding *Patterson*, the focus of this Court's inquiry should be whether Debtor lent herself to a scheme or arrangement whereby a banking authority on which the FDIC relied in insuring the Bank was or was likely to be mislead, quoting the holding in *D'Oench, Duhme.* Under this approach, since Debtor had executed a promissory note secured by a deed of trust on property while at the same time executing a homestead disclaimer the FDIC maintains that she has lent herself to a scheme that was likely to mislead the FDIC and as a result the *D'Oench, Duhme* doctrine bars

her homestead defense. Although this Court had serious reservations about the position of the FDIC, the matter was taken under advisement for additional consideration.

## DISCUSSION OF LAW

After due consideration, this Court is convinced that its initial impression is correct. Furthermore, the Court finds that the Fifth Circuit's holding in *Buchanan* can be reconciled with the holding in *Patterson.*

As previously stated, in the State of Texas, attempts to encumber homestead property are void except where the encumbrance results from a purchase money lien, taxes, or a validly executed mechanic's lien. As a result, a waiver or disclaimer of a homestead is normally ineffective unless the homestead claimant's presence on the homestead property, at the time, was subject to ambiguity. *In re Niland*, 825 F.2d 801, 808 (5th Cir.1987). This is true even if the homestead claimant has intentionally and/or fraudulently concealed the nature of his actual homestead interest. *Id.* While both *Patterson* and *Buchanan* ostensibly involve homestead defenses to the assertion of the *D'Oench, Duhme* doctrine, one of which was successful and the other unsuccessful, this Court is of the opinion that the key to deciphering any possible inconsistency between the two cases rests on the facts of each case.

The Court can understand why the FDIC places such great stock in the holding in *Buchanan.* By its terms the *Buchanan* court defines the *D'Oench, Duhme* analysis in very strict terms: Did the homestead claimant "len[d] herself to a scheme or arrangement whereby the ... [FSLIC] was or was likely to be misled?" However, this analysis is only half complete and somewhat misleading. As recognized by. the *Patterson* court, the Supreme Court has recently emphasized that to the extent one lends himself to such a scheme or arrangement one is foreclosed from later relying on such a scheme or arrangement as a basis for a defense. *Patterson* at 544

*quoting Langley v. FDIC,* 484 U.S. 86, 92, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). *See also Templin v. Weisgram,* 867 F.2d 240, 242 (5th Cir.1989) (Where ... an instrument's invalidity can be established only by reference to a side agreement in which all parties voluntarily participated, the reasoning and legislative intent underlying section 1823(e) apply with full force). Conversely, if the party to such a "scheme or arrangement" has a wholly independent ground of defense *D'Oench, Duhme* is not implicated. *Patterson* at 543 (quoting approvingly from *In re Howard,* 65 B.R. 498, 503 (Bankr.W.D.Tex.1986).

In *Buchanan,* the homestead claimant's attack on the contract creating the mechanic's lien concerned the timing of the lien's execution. As previously stated, for a mechanic's lien to validly encumber a homestead, the contract giving rise to the mechanic's lien must have been entered into prior to the provision of materials or services. Tex.Prop.Code Ann. § 41.001(b)(3) (Vernon Supp.1991). Other than the allegations concerning timing, the contract and resulting lien were facially valid and enforceable. To put it another way, the homestead claimant in *Buchanan* was not asserting the defense that the mechanic's lien was invalid because her property constituted a homestead but that the timing of the execution of the mechanic's lien contract rendered the lien unenforceable to encumber her homestead. By participating in the execution of an erroneous mechanic's lien, the homestead claimant lent herself to the type of scheme or arrangement which *D'Oench, Duhme* declares unenforceable. Indeed, even Texas caselaw supports estop-

pel defenses to homestead claims under these facts.[6] *Lincoln v. Bennett,* 156 S.W.2d 504, 505 (Tex.1941) (Acknowledging that a homestead claimant who has participated in the execution of an improper mechanic's lien contract can be estopped from making a homestead claim under certain circumstances.); *Garrett v. Katz,* 23 S.W.2d 436, 438 (Tex.Civ.App.—Dallas 1930). Since the homestead claimant was foreclosed from using this defense, the facial validity and enforceability of the mechanic's lien contract operated to encumber the homestead to the benefit of the FDIC.

In marked contrast, the debtor in *Patterson* was "not basing her [homestead] claim on an agreement, scheme, or bank representation." *Id.* at 545. Unlike, the homestead claimant in *Buchanan,* the debtor could no more have encumbered her homestead through a nonpurchase money deed of trust than she could have encumbered her neighbor's property. With one exception, a waiver or disclaimer of a homestead, given to secure nonpurchase money indebtedness, has no facial validity in the State of Texas upon which reliance can be placed.[7] Waivers or disclaimers of homesteads, under that circumstance, are simply not allowed. If a document in the FDIC's possession, assuming all of its averments and representations are true, is not susceptible to enforcement, *D'Oench, Duhme* is not implicated. In this respect, while the mechanic's lien in *Buchanan* was facially enforceable in Texas, the attempted encumbrance on *Patterson*'s homestead was void and a nullity *ab initio.*[8] As a holder in due course, the FDIC takes subject to defenses including a defense that

---

**6.** Another generally recognized estoppel defense to a Texas homestead claim is to demonstrate that "the [homestead claimant] creat[ed] a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage." *Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504, 505 (1941). It is interesting to note that the only other Fifth Circuit case relied upon by the FDIC in support of the proposition that the *D'Oench, Duhme* doctrine defeats a homestead claim involves a sham sale. *Templin v. Weisgram,* 867 F.2d 240 (5th Cir.1989).

**7.** In Texas, a homestead claimant can be estopped from claiming a homestead interest in property if the homestead status of the property was dubious at the time a mortgage encumbering the property was executed. *Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504, 505 (Tex. 1941).

**8.** The Court acknowledges that if Texas allowed the waiver or disclaimer of a homestead in favor of nonpurchase money mortgage indebtedness *D'Oench, Duhme* would preclude a party who had executed such a waiver or disclaimer from disputing its terms or enforceability against the FDIC.

the underlying transaction was illegal. Tex.Bus. & Com.Code § 3.305(b).  In *Patterson,* the bank's efforts to encumber debtor's property were illegal under the laws and constitution of the State of Texas. The alchemy of *D'Oench, Duhme* can not change that status.  Accordingly, *Patterson*'s defense of homestead is a real defense which *D'Oench, Duhme* can not overwhelm.[9]  This Court finds that the Fifth Circuit's opinion in *Patterson* is not superseded by the later holding in *Buchanan.*[10]

■ In this case, it is clear that the property in question was Debtor's homestead property at the time the promissory note and deed of trust encumbering the property were executed.  This Court holds that despite Debtor's written assertion to the contrary, Debtor is not precluded by the reach of the *D'Oench, Duhme* doctrine from validly asserting a defense to the enforcement of the promissory note in the hands of the FDIC that the property against which enforcement is sought is Debtor's homestead.  Accordingly, based on the evidence, the Court finds that the Debtor has met her burden of demonstrating that the property in question was and is her homestead and as a result, the lien asserted by the FDIC against that property is void as in violation of the laws of the State of Texas.

**9.**  In the Court's opinion the *Buchanan* homestead claimant's defense that the mechanic's lien contract was untimely and therefore ineffectively executed so as to encumber the homestead would have constituted a personal defense under HDC analysis.

**10.**  This Court's acceptance of the FDIC's reliance on *Buchanan* for the proposition that the

*D'Oench, Duhme* doctrine defeats a homestead claim, under the facts of this case, would have the effect of granting to the FDIC powers even greater than those held by a HDC.  *See Patterson* at 544 (absolute invalidity of a nonpurchase money lien on a homestead is a real defense). In this Court's opinion, *Buchanan* can not be read so expansively.