**ADVANTAGE GROUP INVESTMENT, INC., et al., Appellants,**

v.

**PACIFIC SOUTHWEST BANK, F.S.B., Appellee.**

No. 13–97–143–CV.

Court of Appeals of Texas, Corpus Christi.

June 4, 1998.

G. Don Schauer, Ronald A. Simank, Schauer, Simank & Ledbetter, Corpus Christi, Mike A. Hatchell, Molly H. Hatchell, Ramey & Flock, Tyler, for Appellants.

Paul Eugene Ridley, Frederick Linton Medlin, Wolin, Fuller, Ridley & Miller, Dallas, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellants, Advantage Group Investment, Inc., Ken Dahlberg, Patricia Constant, Joseph Wendt, Edward Whitney, and Michael Bridges (collectively referred to as "AGI"), appeal the trial court's granting of summary judgment in favor of Pacific Southwest Bank ("PSB"). We affirm.

On July 31, 1985, AGI borrowed $1,600,000 from Charter Savings and Loan Association ("Charter") pursuant to a promissory note secured by a deed of trust. It was further secured by personal guarantees executed by individual appellants—Whitney, Dahlberg, Bridges, Wendt, and Constant, who were principals of AGI. On April 4, 1986, AGI borrowed an additional $4,516,050 from Charter pursuant to a second promissory note, also secured by a deed of trust and further personally guaranteed by the above principals.

On November 6, 1987, due to AGI's default, both notes were accelerated and became due. AGI initiated this litigation against Charter in 1988 and entered into an "Interim Agreement" whereby Charter agreed not to foreclose on AGI's collateral without giving thirty days notice and AGI agreed not to pursue a temporary injunction to prevent such sale.

On December 29, 1988, the Federal Home Loan Bank Board ("FHLBB") declared Charter insolvent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver. Pursuant to an FHLBB resolution and applicable federal

law, FSLIC, as receiver, succeeded to all of the powers, rights, and privileges of Charter, including its interest in the above notes, deeds of trust, and guarantees. FSLIC then entered into an "Acquisition Agreement" with PSB in which the notes, deeds of trust, guarantees, and other Charter assets were transferred to PSB. As part of the negotiations, FSLIC requested PSB to assume all the deposit, secured, and certain tax liabilities of Charter. PSB was unwilling to assume such liabilities because they were greater than the value of Charter's assets. Therefore, PSB and FSLIC entered into an "Assistance Agreement" whereby FSLIC agreed to provide financial assistance to PSB.

In 1990, pursuant to applicable statutory requirements, PSB foreclosed on the real property securing the notes. PSB provided at least twenty-one days notice to AGI of the foreclosure proceedings as required by statute. However, it did not provide thirty days notice as was agreed to by Charter and AGI.

PSB filed its First Amended Complaint in Intervention bringing suit on the notes and guarantees on October 29, 1991 in federal court. AGI filed counterclaims against PSB alleging violations by Charter of the Bank Tying Act and wrongful foreclosure by PSB. Additionally, AGI asserted a counterclaim against PSB and the Federal Deposit Insurance Corporation ("FDIC") arising from Charter's conduct in making the loans, for usury, and other claims not the subject of this appeal. The federal district court dismissed the federal claims and remanded the case to state court in March 1995.

In state court, PSB filed its motion for summary judgment on April 29, 1996. On May 22, 1996, the district court issued an order setting June 25, 1996 as the submission day for PSB's motion. On June 20, 1996, five days before the summary judgment hearing, AGI, without leave of court, filed its Third Amended Original Petition and Second Amended Answers. PSB then moved to strike AGI's pleadings, claiming surprise and prejudice and that the pleadings were filed in violation of Texas Rule of Civil Procedure 63, requiring leave of court if amended pleadings are to be filed within seven days of trial.

Thereafter, AGI filed its motion for leave to file late pleadings. The trial court struck AGI's amended pleadings and granted PSB's summary judgment motion.

In point of error three, AGI argues the trial court abused its discretion in striking its Third Amended Original Petition and Second Amended Answers.

■ Texas Rule of Civil Procedure 63 provides that:

> Parties may amend their pleadings, ... as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, ... shall be filed *only* after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R. CIV. P. 63 (emphasis added). The term "trial" as used in rule 63 includes summary judgment proceedings. *Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 490 (Tex.1988). Courts liberally construe rule 63 such that, "in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading, and leave of court is then presumed." *Diesel Fuel Injection Serv., Inc. v. Gabourel*, 893 S.W.2d 610, 611 (Tex.App.— Corpus Christi 1994, no writ) (citing *Lee v. Key West Towers, Inc.*, 783 S.W.2d 586, 588 (Tex.1989)); *see also Goswami*, 751 S.W.2d at 490–91. We will not reverse a trial court's granting of summary judgment absent an abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980).

■ AGI filed its amended pleadings within seven days of the summary judgment proceeding, therefore leave of court was required. It is within the trial court's discretion to refuse leave to file amended pleadings "if the opposing party presents evidence of surprise or prejudice, or if the amendment asserts a new cause of action or defense and the opposing party objects to the amend-

ment." *Bekins Moving & Storage Co. v. Williams,* 947 S.W.2d 568, 573 (Tex.App.— Texarkana 1997, no writ) (citing *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990)).

■ In its Third Amended Original Petition, AGI asserted for the first time that PSB (1) charged usurious interest, (2) wrongfully foreclosed on its collateral, and (3) violated the Texas Deceptive Trade Practices–Consumer Protection Act by breaching its warranty of accounting and performing unconscionable acts. Additionally, AGI's Second Amended Answers included the following defenses not originally pleaded: (1) payment, (2) accord and satisfaction, (3) fraud, and (4) impairment of collateral. AGI also changed its theory of recovery under its usury and wrongful foreclosure defenses. Based upon the foregoing, we hold the trial court did not abuse its discretion in refusing to grant AGI's motion for leave to file its late amended pleadings. Accordingly, AGI's point of error three is overruled.

In points of error one, two, and four, AGI claims the trial court erred in granting PSB's motion for summary judgment because (1) there was a material fact issue concerning payment, and accord and satisfaction of the notes as a result of sums received by the bank under the Assistance Agreement, (2) there was a material fact issue regarding AGI's usury claim, and (3) PSB failed to establish as a matter of law that the foreclosure sale was proper.

In a summary judgment case, the issue on appeal is whether the movant has proved there exists no genuine issue of material fact. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We view the evidence in the light most favorable to the nonmovant and resolve all conflicts in the evidence in its favor. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). The summary judgment will be affirmed only if the record establishes the movant has conclusively proved all essential elements of its cause of action or defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

■ AGI contends there were genuine issues of material fact regarding its defenses of payment, and accord and satisfaction. Texas Rule of Civil Procedure 94 requires appellant to expressly assert any matter constituting an avoidance or affirmative defense. TEX.R. CIV. P. 94. Payment, and accord and satisfaction are affirmative defenses. AGI conceded at the hearing on its motion for leave to file late pleadings that it had not pleaded the affirmative defenses of payment, and accord and satisfaction. However on appeal, AGI asserts its denial that "all payments, credits and offsets have been allowed on the notes" was sufficient notice that it would be challenging PSB's claim based upon an affirmative defense of payment. We disagree. The rules specifically require a party claiming the defense of payment to "file with his plea an account stating distinctly the nature of such payment, ... failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof." TEX.R. CIV. APP. 95; *See Rea v. Sunbelt Sav., FSB, Dallas, Texas,* 822 S.W.2d 370, 372–73 (Tex. App.—Dallas 1991, no writ); *Harrison v. Leasing Associates, Inc.,* 454 S.W.2d 808, 809 (Tex.App.—Houston [14th Dist.] 1970, no writ). AGI failed to properly plead an account and its denial is wholly insufficient to provide the statutorily required notice for an affirmative defense of payment. Additionally, it conceded that it failed to raise this defense and its defense of accord and satisfaction in its original answer. Accordingly, we hold AGI has waived these affirmative defenses. *See* TEX.R. CIV. P. 94; *City of Victoria v. Hoffman,* 809 S.W.2d 603, 605 (Tex.App.—Corpus Christi 1991, writ denied).

■ With regard to its usury defense, AGI failed to verify its defense according to Texas Rule of Civil Procedure 93. Rule 93 provides that unless a pleading that asserts "a contract is usurious" is verified, "no evidence of usurious interest as a defense shall be received." TEX.R. CIV. P. 93. AGI did not verify its claim that PSB charged or contracted for usurious interest, therefore we hold AGI has waived this defense.

Next, we consider AGI's assertion that the trial judge erred in granting summary judgment because the foreclosure sale was improper. Specifically, AGI claims it had entered into an Interim Agreement with Charter that required Charter to give thirty days notice before instituting foreclosure proceedings against AGI's collateral. AGI argues that PSB was bound by the agreement, and because PSB only gave twenty-two days notice, it violated the agreement. We disagree.

■ PSB was not a party to the Interim Agreement—it was only between AGI and Charter. When PSB acquired the assets of Charter, the Acquisition Agreement specifically exempted PSB from Charter's existing obligations. The agreement expressly provided that except for the deposit, secured, and certain tax liabilities

> [PSB] will not assume any of the claims, debts, obligations or liabilities (including without limitation, known or unknown or contingent or unassigned claims; demands, causes of action or judgments; or debts, obligations or liabilities; or commitments to loan or obligations to make future fundings or advances under existing loans or other obligations even if such loans or other obligations are acquired by [PSB]) of [Charter].

We find the above clause dispositive. Even though PSB acquired the AGI loans, it did not "step into the shoes" of Charter with regard to the Interim Agreement.

■ Even if the above clause did not exempt PSB from the obligations of the Interim Agreement, the *D'Oench, Duhme* doctrine[1] does. The *D'Oench, Duhme* doctrine was created by the United States Supreme Court "to protect [the FDIC] and the public funds it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (*now codified as* 12 U.S.C. § 1823(e) (1989) as amended by the Financial Institutions Re-

form, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (FIRREA)). The Court in *D'Oench, Duhme* granted the FDIC a federal holder in due course status when it acquires assets of a failed institution in receivership. *See* 12 U.S.C. § 1823(e) (1989); *FDIC v. Wood,* 758 F.2d 156, 159 (6th Cir.1985). The purpose was to protect the FDIC from secret agreements that were not reflected in a failed institution's records. *Cockrell v. Republic Mortg. Ins. Co.,* 817 S.W.2d 106, 114 (Tex. App.—Dallas 1991, no writ). The *D'Oench, Duhme* doctrine also protects the FSLIC when it acts as receiver, *FSLIC v. Murray,* 853 F.2d 1251, 1254 (5th Cir.1988), and has been extended to protect the purchasers and "bridge banks" of the FDIC/FSLIC. *Porras v. Petroplex Sav. Ass'n.,* 903 F.2d 379, 380–81 (5th Cir.1990) (protecting purchasers); *Bell & Murphy & Assocs. v. Interfirst Bank Gateway,* 894 F.2d 750, 754–55 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990) (protecting bridge banks as assignees of the FDIC); *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989) (protecting purchasers).

In its codified form, the *D'Oench, Duhme* doctrine provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall

---

1. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (*now codified as* 12 U.S.C. § 1823(e) (1989) as amend-

ed by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (FIRREA)).

be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

■ Arguing the *D'Oench, Duhme* doctrine is inapplicable, AGI first asserts the Interim Agreement is not the type of secret, oral, unrecorded agreement to which the doctrine is aimed. While the doctrine may have originally been aimed at secret agreements as AGI contends, the codified version specifically provides that "no agreement which tends to defeat or diminish" an interest in any asset is binding upon the FDIC/FSLIC or its successors.

Next, AGI claims the Interim Agreement does not "defeat or diminish" PSB's interest in the loans it acquired from FSLIC. The Interim Agreement provided a limitation of Charter's rights of foreclosure under its notes and deeds of trust with AGI. Therefore, we hold it does, in fact, "defeat or diminish" an interest such that the doctrine applies.

AGI's third argument is equally without merit. AGI, citing *FDIC v. McFarland*, 33 F.3d 532 (5th Cir.1994), argues that the Interim Agreement became part of the loan documents and, therefore, was not a separate and collateral agreement. In *McFarland*, the Fifth Circuit held the *D'Oench, Duhme* doctrine applies to separate and collateral agreements and not to those agreements that are part of the loan documents. *Id.* at 536–37. The Interim Agreement was not executed with the original loans and deeds of trust. In fact, it is undisputed the Interim Agreement was executed only after AGI had defaulted on the loans and as a compromise between AGI and Charter to prevent AGI from seeking a temporary injunction on Charter's foreclosure. Therefore, we find the Interim Agreement was a separate and collateral agreement, and under *McFarland*, the doctrine is applicable.

AGI's fourth argument that the *D'Oench, Duhme* doctrine is inapplicable asserts that because Charter received a benefit by the Interim Agreement, it was an asset apart from the notes which PSB acquired. AGI offers no authority for this proposition and we find none to support it. Accordingly, we dismiss this contention.

Finally, AGI argues the Interim Agreement was filed in state court and, pursuant to Texas Rule of Civil Procedure 11,[2] became binding upon PSB, and the doctrine cannot abrogate state law. AGI is correct in its analysis regarding Charter,[3] but the same rules do not apply to PSB. PSB did not substitute for Charter in the litigation. Instead, it intervened in its own right as owner and holder of the notes in question. While the agreement might be enforceable against Charter, it does not govern the rights of PSB because PSB "stands in the shoes" of the FSLIC as receiver and, therefore, the issue is governed by the *D'Oench, Duhme* doctrine. *See FDIC v. Gardner*, 606 F.Supp. 1484, 1488 (S.D.Miss.1985) (holding, under *D'Oench, Duhme* doctrine, side agreement between bank president and borrowers that bank would never seek collections was not enforceable against receiver because no approval reflected in board or loan committee minutes).

Having found the *D'Oench, Duhme* doctrine is applicable to the Interim Agreement, we hold that because the agreement was not executed contemporaneously with the original loans as required by § 1823, it cannot be binding upon PSB. 12 U.S.C. § 1823(e).

Accordingly, AGI's first, second, and fourth points of error are overruled.

The judgment of the trial court is AFFIRMED.

---

2. Rule 11 states: "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers of the record, or unless it be made in open court and entered of record." Tex.R. Civ. P. 11.

3. *See In re Napier*, 144 B.R. 719, 724 (W.D.Tex. 1992) (emphasizing the *D'Oench, Duhme* doctrine does not abrogate Texas Homestead law).