

# NUMBERS 13-16-00210-CV AND 13-16-00463-CV

## COURT OF APPEALS

## THIRTEEN DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

PLAINSCAPITAL BANK,            **Appellant,**

v.

RICARDO DIAZ MIRANDA,            **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# NUMBER 13-16-00464-CV

## COURT OF APPEALS

## THIRTEEN DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

## IN RE PLAINSCAPITAL BANK

**On Petition for Writ of Mandamus.**

# MEMORANDUM OPINION
## Before Justices Rodriguez, Benavides, and Longoria
## Memorandum Opinion by Justice Benavides

This consolidated appeal[1] stems from three bank notes made by appellee Ricardo Diaz Miranda (Diaz) and now held by appellant PlainsCapital Bank (PlainsCapital). By six issues in appellate cause number 13-16-00210-CV, PlainsCapital asserts six legal sufficiency challenges attacking the trial court's judgment, including challenges to: (1) the jury's findings on (a) the amounts due on the notes, (b) fraud, and (c) prior material breach; and (2) the trial court's award of (a) rescission, (b) attorney's fees, and (c) declaratory relief in Diaz's favor on one of the notes. In appellate cause number 13-16-00210-CV, we reverse and render. In light of our disposition in appellate cause number 13-16-00210-CV, we dismiss appellate cause numbers 13-16-00463-CV and 13-16-00464-CV as moot.

## I. BACKGROUND

### A. Factual Background

The record in this case shows that in 2011, Diaz sought financing for a cold-storage business that he wanted to build along the Texas-Mexico border in Pharr, Texas. After numerous failed attempts to obtain financing from other banks, Diaz eventually met with Saul Ortega, a high-level officer of the now-defunct First National Bank. At this meeting, Diaz provided Ortega with written materials that outlined Diaz's plans to build the cold-storage facility. According to Diaz, later in the meeting, Ortega made an oral commitment to loan Diaz the money to build his cold-storage facility on the conditions that Diaz also purchase two different apartment complexes and a residence located in La Joya. The first

---

[1] This appeal concerns three separate but related appeals: (1) *PlainsCapital Bank v. Ricardo Diaz Miranda*, No. 13-16-00210-CV; (2) *PlainsCapital Bank v. Ricardo Diaz Miranda*, No. 13-16-00463-CV; and (3) *In re PlainsCapital Bank*, No. 13-16-00464-CV.

apartment complex at issue was located on Moorefield Road in Mission; and the second apartment complex at issue was located on McColl Road in McAllen. The record shows that both apartment complexes were owned by First National Bank prior to Diaz's purchase.

Relevant to this appeal, Diaz executed three promissory notes in First National Bank's favor. The first note (the Moorefield Note) concerned the Moorefield Road apartment complex, which totaled $1,190,000.00, plus interest; the second note (the McColl Note) concerned the McColl Road apartment complex, which totaled $5,300,000.00, plus interest; and the third note (the Cold-Storage Note) concerned the building of Diaz's cold-storage business in Pharr, which totaled $1,773,000.00, plus interest. Under these three notes, Diaz operated both apartment complexes and built and opened his cold-storage business.[2]

Diaz made timely payments on the notes through July 2013. However, in the ensuing months, First National Bank notified Diaz that he was in default on each of the three notes at issue. Furthermore, First National Bank notified Diaz that if the defaults were not cured, it would accelerate the notes and potentially foreclose on the properties. The record shows that Diaz failed to cure the defaults, and First National Bank accelerated the amounts owed on each of the notes, making them due and payable in full.

Sometime after Diaz's notes became due and payable, First National Bank ceased operations, and the Federal Deposit Insurance Corporation (FDIC), as a receiver, took over First National Bank's operations and assets. Among the assets that the FDIC took control were the three notes at issue in this case. The FDIC then sold these notes to

---

[2] Although a fourth promissory note was executed by Diaz and First National Bank for the La Joya residence, this note is not subject to the present appeal.

PlainsCapital in a negotiated sale. As a result, PlainsCapital became the successor-in-interest to the notes and sought to recover the balances of these notes from Diaz.

## B.     Procedural Background

After First National Bank accelerated the Moorefield, McColl, and Cold-Storage Notes, Diaz sued PlainsCapital as successor-in-interest to the notes seeking damages and injunctive relief for wrongful foreclosure. Additionally, Diaz sought rescission of the notes owed to PlainsCapital because the loans were "marred by fraud."[3]

During the pendency of the litigation, Diaz sold the Moorefield property, and PlainsCapital received $673,681.50 as net proceeds from the sale. This amount was credited to the total owed on the Moorefield note. Despite this lump sum payment, PlainsCapital contended at trial that $843,975.94 of the principal, plus $91,131.82 in interest ($935,107.76 total) remained due and owed on the Moorefield Note. Additionally, the record shows that Diaz sold the McColl property for a net sale of $2,723,485.40. The entire amount was transferred in its entirety to PlainsCapital. Despite this lump sum payment, PlainsCapital contended at trial that $3,789,576.72 of the principal, plus $693,201.41 in interest ($4,482,778.13 total) remained due and owed on the McColl Note. Lastly, the record shows that from August 2014 until November 2015, Diaz made monthly payments of $15,721.00 on the Cold-Storage Note, which allegedly made Diaz current on his payments. Despite these payments, PlainsCapital contended that at trial that $1,760,906.87 of principal, plus $385,778.75 in interest ($2,146,685.62 total) remained due and owed on the Cold-Storage Note.

---

[3] Diaz also sued Saul Ortega for damages alleging claims of: (1) fraud and self-dealing, and (2) breach of fiduciary duty. Prior to trial, Diaz and Ortega reached a settlement, and Diaz nonsuited all claims against Ortega.

At trial, Diaz filed a trial amendment to his petition to include a cause of action for breach of contract by acting in a manner that induced Diaz to default on the notes. PlainsCapital filed a counterclaim asserting its right to recover the unpaid balance, interest, and attorneys' fees related to the three notes.

The claims were tried to a Hidalgo County jury, and the jury made the following summarized findings, by a non-unanimous, 10–2 decision:

(1) Ortega acted on behalf of First National Bank with regard to the loan transactions with Diaz;

(2) First National Bank, acting through Ortega, committed fraud against Diaz;

(3) First National Bank's conduct, through Ortega, was not excused;

(4) Diaz's injury in this case was proximately caused by his own negligence, attributing 15-percent responsibility to Diaz, and 85-percent responsibility to Ortega, acting with authority from First National Bank.

(5) PlainsCapital failed to comply with the terms of Diaz's promissory notes, and its failure was not excused;

(6) Diaz was awarded zero dollars in damages resulting from Ortega, acting with authority from First National Bank and PlainsCapital's conduct;

(7) Diaz was entitled to $100,000.00 in reasonable and necessary attorney's fees for the prosecution of his contract claims against PlainsCapital;

(8) PlainsCapital is the owner and holder of the Moorefield Note, Diaz defaulted in paying the Moorefield Note, and the principal and interest due totaled zero dollars;

(9) PlainsCapital is the owner and holder of the McColl Note, Diaz defaulted in paying the McColl Note, and the principal and interest due totaled zero dollars; and

(10) PlainsCapital is the owner and holder of the Cold-Storage Note, Diaz defaulted in paying the Cold-Storage Note, and the principal and interest due totaled $1,507,146.34.

5

Following the jury's verdict, PlainsCapital filed a "Motion for Judgment Non Obstante Veredicto, To Disregard Jury Findings, and/or For Judgment on the Verdict." Specifically, PlainsCapital asked the trial court to disregard the following findings:

(1)     That the principal and interest due on the Moorefield Note is zero dollars, after PlainsCapital conclusively established that the principal owed on the note totaled $843,975.94, and the interest totaled $91,131.82;

(2)     That the principal and interest due on the McColl Note is zero dollars, after PlainsCapital conclusively established that the principal owed on the note totaled $3,789,567.72, and the interest totaled $693,201.41; and

(3)     The $100,000 award of reasonable and necessary attorney's fees is legally insufficient because the jury did not award Diaz any damages in his breach of contract action, and PlainsCapital established as a matter of law that such conduct was excused.

In the same motion, PlainsCapital also requested that the trial court render judgment that:

(1)     Diaz take nothing on his fraud claim because the jury found no damages as a result of the alleged fraud. Furthermore, the trial court should disregard any finding that First National Bank, acting through Ortega, committed fraud against Diaz because such a finding was not supported as a matter of law under 12 U.S.C.A. § 1823(e) (West, Westlaw through P.L. 115–68) and section 26.02 of the Texas Business and Commerce Code. *See* Tex. Bus. & Comm. Code § 26.02 (West, Westlaw through 2017 1st C.S.); and

(2)     Diaz take nothing on his breach of contract claim because the jury found no damages as a result of the alleged breach.

The trial court subsequently entered the following final judgment in relevant part:

(1)     Diaz recover $100,000 with interest from PlainsCapital;

(2)     Diaz owes PlainsCapital $1,401,996.60 in principal, plus $105,149.75 in interest on the Cold-Storage Note;

(3)     Diaz continue to make payments in the amount of $15,721.00 for principal and interest on the Cold-Storage Note;

(4)     PlainsCapital take nothing from Diaz on the Moorefield Note as there is no deficiency on the note; and

6

(5)     PlainsCapital take nothing from Diaz on the McColl Note as there is no deficiency on the note.

This appeal followed.

## II.     LEGAL SUFFICIENCY CHALLENGES

By six issues, PlainsCapital challenges the legal sufficiency supporting six different parts of the trial court's final judgment.

### A.     Standard of Review

A legal sufficiency challenge will be sustained when the record confirms either: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). In conducting a legal sufficiency review, we must view the evidence in the light most favorable to the verdict. *Id.*

When reviewing all of the evidence in a light favorable to the verdict, courts must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review. *Id.* at 620–21. When reviewing circumstantial evidence that favors the verdict, we must view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances. *Id.* If circumstantial evidence, when viewed in light of all the known circumstances, is equally consistent with either of two facts, then neither fact may be inferred. *Id.* But where the circumstantial evidence is not equally consistent with either of two facts, and the inference

7

drawn by the jury is within the "zone of reasonable disagreement," a reviewing court cannot substitute its judgment for that of the trier-of-fact. *Id.*

**B.    Discussion**

We will address each of PlainsCapital's legal sufficiency challenges in turn.

**1.    Amounts Due and Owed & Fraud Finding Against First National Bank**

By its first issue, PlainsCapital argues that the trial court erred by entering judgment for incorrect amounts due and owed to PlainsCapital on each of the notes at issue because such amounts were not supported by legally sufficiency evidence.    Furthermore, PlainsCapital argued that it conclusively established the appropriate balances owed on each of the three notes arising out of its counterclaim.

In response to this first issue, Diaz argues that the jury's fraud finding and damages award nullified PlainsCapital's ability to collect the full amount due and owed on the three notes.

**a.  Amounts Due and Owed**

To recover on a debt due under a promissory note, the plaintiff must establish that: (1) the note in question exists, (2) the debtor executed the note, (3) the lender is the holder or owner of the note, and (4) a certain balance is due and owing on the note. *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 674 (Tex. App.—Austin 2000, pet. denied); *Commercial Servs. of Perry, Inc. v. Woolridge*, 968 S.W.2d 560, 564 (Tex. App.—Fort Worth 1998, no pet.).

8

The jury found the first three elements on recovery of a debt due under a promissory note in PlainsCapital's favor, and such findings are unchallenged by cross-appeal. *See Martin*, 377 S.W.3d at 84. PlainsCapital only challenges the jury's findings with regard to the amounts due and owed on each note. *See id.*

First, with regard to the Moorefield Note, the trial court admitted uncontroverted and conclusive evidence from PlainsCapital that the amount of principal ($843,975.94) and interest ($91,131.82) due and owed as of November 2015 totaled $935,107.76, after taking into account the $673,681.50 received by PlainsCapital from the sale of the Moorefield property. The record is devoid of an amount other than $935,107.76 in principal and interest that is due and owed on the Moorefield Note. As a result, the jury's finding of zero dollars owed on the Moorefield Note was based on legally insufficient evidence, and the trial court erred by including that figure in its judgment. *See Castillo*, 444 S.W.3d at 620.

Second, with regard to the McColl Note, the trial court admitted uncontroverted and conclusive evidence from PlainsCapital that the amount of principal ($3,789,567.72) and interest ($693,201.41) due and owed as of November 2015 totaled $4,482,769.13, after taking into account the $2,723,485.40 received by PlainsCapital from the sale of the McColl property. Again, the record is devoid of an amount other than the $4,482,769.13 in principal and interest that is due and owed on the McColl Note. Therefore, the jury's finding of zero dollars owed on the McColl Note was based on legally insufficient evidence, and the trial court erred by incorporating the zero-dollar finding in its judgment. *See id.*

Lastly, with regard to the Cold-Storage Note, the trial court admitted uncontroverted and conclusive evidence from PlainsCapital that the amount of principal ($1,760,906.87)

and interest ($385,778.75) due and owed as of November 2015 totaled $2,146,685.62, despite the payments made by Diaz to PlainsCapital totaling $15,721.00 per month. Like the other notes, the record is devoid of an amount other than $2,146,685.62 in principal and interest that is due and owed on the Cold-Storage Note. Thus, the jury's finding that Diaz owed $1,507,146.34—which is approximately seventy percent of what the conclusive evidence shows is due and owed—was based on legally insufficient evidence, and the trial court erred by incorporating this finding in its judgment. *See id.*

We sustain PlainsCapital's first issue.[4]

### b. Fraud

By its second issue, PlainsCapital primarily argues that Diaz is not entitled to relief under the jury's fraud finding because he "did not plead, submit, or prove an affirmative defense of fraud." However, PlainsCapital further argues that even if Diaz properly pleaded, submitted, and proved an affirmative defense of fraud in this case, such a finding is unsustainable as a matter of law.

We turn first to PlainsCapital's alternative argument in this issue because it is dispositive. *See* TEX. R. APP. P. 47.1. Assuming without deciding that Diaz pleaded, submitted, and obtained a finding of fraud as an affirmative defense, we nevertheless conclude that such an affirmative defense finding was barred under federal law.

PlainsCapital invokes the federal *D'Oench, Duhme* Doctrine. *See D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 453–62 (1942). When the Federal Deposit

---

[4] Because we sustain PlainsCapital's first issue that the jury's award of $1,507,146.35 on the Cold-Storage Note was legally insufficient and that PlainsCapital conclusively established that it is owed $2,146,685.62 on the Cold-Storage Note, we dismiss PlainsCapital's sixth issue as moot. In that issue, PlainsCapital requested that we reverse and render the amount due under the Cold-Storage Note of $1,507,146.35 without awarding PlainsCapital that amount.

10

Insurance Corporation (FDIC) acts as a receiver for a failed bank, the *D'Oench, Duhme* Doctrine bars the use of an unrecorded agreement between a borrower and the failed bank as a basis for defenses or claims against the FDIC or its assigns. *See id.*; *Bluebonnet Sav. Bank v. Jones Country, Inc.*, 920 S.W.2d 670, 671 (Tex. 1996) (per curiam); *see also* 12 U.S.C.A. § 1823(e) (West, Westlaw through P.L. 115–122) (codifying *D'Oench's* rule that no agreement which tends to diminish or defeat the interest of the FDIC in any asset acquired by it shall be valid against the FDIC unless it: (A) is in writing; (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution; (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution).

The policies behind this doctrine are to: (1) allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets, which are necessary when a bank is examined for fiscal soundness, deciding whether to liquidate the failed bank, or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank; and (2) ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of banks employees, when a bank appears headed for failure. *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 91–92 (1987).

With that said, neither section 1823(e) nor the *D'Oench, Duhme* doctrine bans all affirmative claims or defenses that can be asserted by borrowers. *See Garrett v.*

11

*Commonwealth Mortg. Corp. of Am.*, 935 F.2d 591, 595 (5th Cir. 1991). For example, while the ban applies to the borrower defense of fraud in the inducement, it does not necessarily bar a defense of fraud in the factum—that is, "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley*, 484 U.S. at 93–94.

Additionally, courts have held that the doctrine extends to other entities beyond the FDIC, such as assignees of the FDIC, those who purchase notes of a failed bank from the FDIC, and "bridge banks" of the FDIC, which are institutions authorized to operate a failed bank. *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir. 1990).[5]

The facts of this case clearly implicate the *D'Oench, Duhme* Doctrine. The record shows that PlainsCapital obtained the notes at issue in this appeal by purchasing them as assets from the FDIC, after First National Bank became insolvent. Furthermore, Diaz sought at trial to void the amount owed on the notes by asserting a fraud-in-the-inducement defense. Diaz alleged that Saul Ortega, acting on behalf of First National Bank, verbally imposed various conditions on Diaz to obtain the Cold-Storage Note by purchasing other non-related properties, but these conditions were never reduced to writing. Diaz further alleged that Ortega orally misrepresented the financial viability and stability of those other properties. These erroneous or even fraudulent representations, if true as alleged, would render a note voidable. *See Langley*, 484 U.S. at 94. This voidable title was then transferred by First National Bank to the FDIC, which is enough to constitute

---

[5] This Court has also extended the *D'Oench, Duhme* Doctrine to state court proceedings in which we invalidated an interim foreclosure agreement between a borrower and a failed savings and loan bank that was in receivership of the Federal Savings and Loan Insurance Corporation (FSLIC) because the agreement tended to defeat or diminish the FSLIC, FDIC, or its successors interest in the assets placed in receivership. *See Advantage Grp. Inv., Inc. v. Pac. Sw. Bank, F.S.B.*, 972 S.W.2d 866, 870 (Tex. App.—Corpus Christi 1998, pet. denied).

"title or interest" in the note, as defined by section 1823(e) and subject to the *D'Oench, Duhme* Doctrine. *See id.* Section 1823(e) places the onus upon a borrower to protect himself by assuring that his agreement is not secret or undocumented, like the one alleged in this case between Diaz and First National Bank, but is instead made in writing, approved, and recorded in accordance with the statute. *See id.* at 403. Nothing in the record shows that such alleged representations by Ortega met the requirements of section 1823(e) so as to permit Diaz to now assert a defense of fraud in the inducement. *See* 12 U.S.C.A. § 1823(e). Therefore, the *D'Oench, Duhme* Doctrine applies to his case and causes Diaz's affirmative defense of fraud to fail as a matter of law.

We sustain PlainsCapital's second issue.

### 2. Breach by PlainsCapital

By its third issue, PlainsCapital challenges the legal sufficiency of the evidence regarding the jury's finding that PlainsCapital failed to comply with the terms of the promissory note.

Diaz filed a trial amendment before submitting the case to the jury, which stated the following:

> **V. FIRST CAUSE OF ACTION: BREACH OF CONTRACT COUNT I WRONGFUL ACCELERATION AND ATTEMPTED FORECLOSURE**
>
> Any technical "default" in the terms of any notes was caused in whole or in part by the actions of Defendant [PlainsCapital] in inducing such default. Defendant [PlainsCapital] did virtually no due diligence on these notes. Had [PlainsCapital] done any due diligence it would have recognized that the loans and notes attached thereto were the subject of fraud and/or negligence. The appraisals reflected completely unrealistic and incorrect values. While [PlainsCapital] was not a fiduciary as to Diaz, it did have a contractual obligation as the successor to the assets to determine if the loans were properly handled once it acquired the assets. It failed to act with the reasonable prudence in not doing due diligence. By not doing so it wrongly accelerated the maturity of the notes in violation of the contract and

13

thereafter at least attempted to wrongfully foreclose. . . . As a proximate result of [PlainsCapital's] breach of contract Diaz has been damaged in an amount in excess of the jurisdictional limit of the court. Diaz has been required to obtain counsel to prosecute this claim and pursuant to [Texas Civil Practice and Remedies Code] § 38.001(8) seeks recovery of its reasonable and necessary attorney's fee.

The elements in an affirmative claim for breach of contract are: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi 2001, no pet.). PlainsCapital argues that Diaz's breach of contract claim fails as a matter of law because the jury found no damages with regard to any purported breach by PlainsCapital. The award of damages to a plaintiff is an essential element to maintaining a successful cause of action for breach of contract. *See id.* Here, since no damages were awarded, legally insufficient evidence supports Diaz's claim for breach of contract against PlainsCapital bank. Accordingly, we sustain PlainsCapital's third issue.

### 3. Rescission

By its fourth issue, PlainsCapital asserts that the trial court erred by granting Diaz rescission, when he: (1) did not plead for that relief, and (2) did not prove the elements for rescission.

Even assuming that Diaz pleaded a claim for rescission, we conclude that such relief was not appropriate in this case. The equitable relief of rescission is generally not granted for breach of contract or for a completed contract in the absence of fraud. *See City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 251 (Tex. App.—Corpus Christi 1987, writ denied). Here, we have already held that Diaz's affirmative defense of fraud finding that would entitle him to rescission of the Moorefield

14

and McColl notes was barred as matter of law. As a result, we conclude that rescission was improper. We sustain PlainsCapital's fourth issue.

### 4. Attorney's Fees

By its fifth issue, PlainsCapital asserts that Diaz is precluded as a matter of law from recovering attorney's fees in this case because the jury found no damages on his breach of contract action. We agree.

Diaz requested attorney's fees under his breach of contract action pursuant to section 38.001(8) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West, Westlaw through 2017 1st C.S.) (permitting recovery of attorney's fees in a breach-of-contract claim).

To recover fees under section 38.001, a party must prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *Intercont'l Grp. P'ship v. K.B. Home Lone Star, L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Here, the record shows that the jury awarded Diaz zero dollars in damages on his breach of contract action. As a result, Diaz was not entitled to recover the $100,000 in attorneys' fees awarded to him by the jury under his breach of contract action. *See Intercontinental Group*, 295 S.W.3d at 653. We sustain PlainsCapital's fifth issue.

### III. RELATED APPEALS

Since filing its appeal in appellate cause number 13-16-00210-CV, PlainsCapital filed two ancillary appeals related to this case. We will address each appeal below.

### A. Appellate Cause Numbers 13-16-00463-CV & 13-16-00464-CV

### 1. Background

Following the signing of the final judgment in appellate cause number 13-16-00210-CV, Diaz filed a post-judgment motion with the trial court entitled "Plaintiff's Motion to Compel Acceptance of Payment and For Release of Lien." In this motion, Diaz stated the following: (1) the jury found that the balance owed on the Cold-Storage Note totaled $1,507,146.34 in principal and interest; (2) Diaz found a new lender that was willing to refinance the Cold-Storage Note for the amount found owed on the Cold-Storage Note; and (3) Diaz prayed that PlainsCapital be ordered to accept $1,507,146.34 as a payoff amount owed on the Cold-Storage Note and release its lien held on the property associated with the Cold-Storage Note.

After holding a hearing, the trial court granted Diaz's motion and ordered that: (1) PlainsCapital accept payment of $1,603,278.13 for the Cold-Storage Note; (2) PlainsCapital release its first lien on the cold-storage unit, immediately upon payment of $1,603,278.13 on or before August 22, 2016; (3) PlainsCapital sign a release of lis pendens on the cold-storage unit; and (4) Diaz give PlainsCapital a second lien on the property.

PlainsCapital perfected an appeal with this Court on the trial court's order granting Diaz's motion to compel acceptance of payment and for release of lien, which was assigned appellate cause number 13-16-00463-CV. Concurrent with filing that direct appeal, PlainsCapital filed an emergency motion to stay the trial court's order granting Diaz's motion to compel acceptance of payment and for release of lien and a petition for writ of mandamus seeking that we order the trial court to conduct a hearing on PlainsCapital's request for supersedeas and set a supersedeas amount for the order, which was assigned appellate cause number 13-16-00464-CV. On August 19, 2016, this

16

Court granted PlainsCapital's motion for emergency relief and stayed the trial court's order pending further order of this Court, or until the case is finally decided.

### 2. Mootness

Courts are created not for purposes of deciding abstract or academic questions of law or to render advisory opinions, but solely for judicial determination of presently existing disputes between parties in which effective judgment can be rendered. *Brownsville Ind. Sch. Dist. Bd. Of Trustees v. Brownsville Herald*, 831 S.W.2d 537, 538–39 (Tex. App.— Corpus Christi 1992, no writ). This means that when a judgment cannot have a practical effect on an existing controversy, the case is moot. *Id.* at 539. When a cause becomes moot, an appellate court must dismiss the cause, not merely the appeal. *Id.*

Here, the orders that form the basis of PlainsCapital's related appeal and petition for writ of mandamus are premised upon the trial court's judgment signed following the jury's verdict in the underlying case (appellate cause number 13-16-00210-CV). However, because our opinion today reverses and renders a different judgment than that of the trial court, we conclude that the appeals in appellate cause numbers 13-16-00463-CV and 13-16-00464-CV are moot.

### IV. CONCLUSION

In appellate cause number 13-16-00210-CV, we reverse the trial court's judgment and render that PlainsCapital is entitled to the following unpaid balances of principal and interest: (1) $935,107.76 on the Moorefield Note; (2) $4,482,769.13 on the McColl Note; and (3) $2,146,685.62 on the Cold-Storage Note. We further render that Diaz take nothing in attorneys' fees.

17

Finally, we dismiss appellate cause numbers 13-16-00463-CV and 13-16-00464-CV as moot.

GINA M. BENAVIDES,
Justice

Delivered and filed the
15th day of March, 2018.